Filed 2/16/22  In re Vinson CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re<br><br>TOM LOVE VINSON<br><br>on Habeas Corpus. | B313583<br><br>(Los Angeles County<br>Super. Ct. No. NA083837)<br><br>ORDER MODIFYING OPINION<br><br>(NO CHANGE IN THE APPELLATE JUDGMENT) |

THE COURT:

The above-entitled opinion filed on February 10, 2022 is modified as follows:

On page 1, paragraph 2, delete "Fay Arfa, under appointment by the Court of Appeal, for Petitioner" and replace it with "Fay Arfa for Petitioner."

There is no change in the appellate judgment.

_____

PERLUSS, P. J.        SEGAL, J.        FEUER, J.

Filed 2/10/22  In re Vinson CA2/7 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re | B313583 |
| TOM LOVE VINSON | (Los Angeles County Super. Ct. No. NA083837) |
| on Habeas Corpus. | |

ORIGINAL PROCEEDING on petition for a writ of habeas corpus.  Judith L. Meyer, Judge.  Petition granted.

Fay Arfa, under appointment by the Court of Appeal, for Petitioner.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, David E. Madeo and David A. Voet, Deputy Attorneys General, for Respondent.

————————————

A jury convicted Tom Love Vinson of first degree murder, attempted voluntary manslaughter, and two counts of attempted willful, deliberate, and premeditated murder.  The trial court sentenced Vinson to 130 years to life plus a determinate term of 25 years six months.

In Vinson's first appeal, we affirmed Vinson's convictions but remanded to the trial court for resentencing, directing the court to consider the mitigating sentencing factors applicable to juveniles enunciated in *Miller v. Alabama* (2012) 567 U.S. 460. (*People v. Vinson* (March 13, 2013, B238043) [nonpub. opn.] (*Vinson I*).)  The California Supreme Court denied review.

On remand, the trial court imposed the same sentence, and Vinson again appealed.  On November 8, 2016, while Vinson's second appeal was pending, the voters passed Proposition 57, The Public Safety and Rehabilitation Act of 2016 (Cal. Const., art. I, § 32), which reformed the process by which criminal cases may be filed against juveniles in criminal courts.  In supplemental briefing, Vinson, who was 16 years old at the time of the offenses, argued Proposition 57 applied retroactively to his case.  We rejected Vinson's argument without resolving the retroactivity of Proposition 57 generally, concluding Vinson's judgment of conviction was final prior to enactment of Proposition 57 because the time to petition for a writ of certiorari in the United States Supreme Court had passed with respect to Vinson's judgment of conviction, even though we had remanded for resentencing and Proposition 57 had modified "state criminal procedures" with respect to filing in juvenile court.  (*People v. Vinson* (Feb. 8, 2017,

2

B257225) [nonpub. opn.] (*Vinson II*).)[1] The California Supreme Court again denied review.

On February 1, 2018 the Supreme Court in *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 303-304 (*Lara*) applied the "inference of retroactivity" under *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*) to Proposition 57, holding the law applies to all juveniles charged directly in adult court whose judgments were not final at the time Proposition 57 was enacted.

On July 14, 2021 Vinson filed a petition for writ of habeas corpus in this court seeking relief under *Lara*. Although we summarily denied the petition, the Supreme Court granted Vinson's petition for review, directing this court to vacate our prior order denying the petition for writ of habeas corpus and to "reconsider the cause in light of [*Lara*]." (*In re Vinson* (Sept. 15, 2021, S270010).) On September 22, 2021 we issued an order to show cause why relief should not be granted. The People filed a return, and Vinson filed a traverse.

Vinson contends, the People concede, and we agree Vinson is entitled to a retroactive transfer hearing in the juvenile court under Proposition 57. We now grant the petition.

---

[1] We also concluded Vinson's contention his sentence violated the Eighth Amendment had been rendered moot by the Legislature's enactment of Penal Code section 3051, which entitled Vinson to a youth offender parole hearing with a meaningful opportunity for release after 25 years of incarceration. However, we remanded to the trial court to afford Vinson an opportunity pursuant to *People v. Franklin* (2016) 63 Cal.4th 261 to make a record of youth-related mitigating circumstances for purposes of a future youth offender parole hearing. (*Vinson II*, B257225.) Further undesignated statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     *The Evidence at Trial*[2]

On the evening of October 30, 2009, at a homecoming football game at Wilson High School in Long Beach, Vinson, a member of the Baby Insane clique of the Insane Crips gang, encountered members of a rival gang, the Rolling Twenties Crips, including Marcus Moore and Brad Van.  Students Melody Ross and Tori R. were sitting on the curb nearby.  As Vinson and fellow gang member Nicholas Campbell approached their rivals, both said "Babies."  Moore and someone else responded, "Twenties."  Vinson then fired a handgun four times in Moore's direction, killing Ross and wounding Moore and Van.

Vinson was 16 years old at the time of the shooting.  He testified he had been a member of the Rolling Twenties Crips street gang before switching to the Baby Insane Crips.  A person can be killed for switching gangs.  Vinson carried a gun because he was always in fear for his life and he had been shot at 20 times and beaten up for switching gangs.  Vinson testified he shot his gun only after seeing Van point a gun in his direction.  Vinson did not aim at Ross or intend to kill her.  Moore admitted he had made threatening gang gestures at Vinson in the past and brought a concealed and loaded handgun to the game.

### B.     *The Verdict and Sentencing*

The jury convicted Vinson of the first degree murder of Ross (Pen. Code, § 187, subd. (a); count 1), the attempted willful, deliberate, and premeditated murders of Moore and Van (§§ 187,

---

[2]     We take the discussion of the evidence at trial from *Vinson I, supra*, B238043 and *Vinson II, supra*, B257225.

subd. (a), 664; counts 2 and 3), and the attempted voluntary manslaughter of Tori R. (§ 192, subd. (a), 664; count 4).  The jury also found true the allegations Vinson personally and intentionally discharged a firearm causing great bodily injury as to counts 1, 2, and 3 (§ 12022.53, subds. (b), (c), & (d)), Vinson personally used a firearm in the commission of count 4 (§ 12022.5, subd. (a)), and each crime was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

The trial court sentenced Vinson to 130 years to life plus a determinate term of 25 years six months.

## DISCUSSION

A.    *Proposition 57*

"Proposition 57, passed in the November 2016 general election . . . , requires prosecutors to commence all cases involving a minor in juvenile court."  (*O.G. v. Superior Court of Ventura County* (2021) 11 Cal.5th 82, 87 (*O.G.*); accord, *Lara, supra,* 4 Cal.5th at pp. 305-306 ["'Among other provisions, Proposition 57 amended the Welfare and Institutions Code so as to eliminate direct filing by prosecutors.'"]; *J.N. v. Superior Court* (2018) 23 Cal.App.5th 706, 711 ["Proposition 57 terminated the prosecutor's ability to file a criminal complaint against a juvenile in the criminal court without first obtaining authority from a juvenile court judge to treat the juvenile as an adult."].)  Proposition 57 became effective November 9, 2016.  (*People v. Lizarraga* (2020) 56 Cal.App.5th 201, 208.)  Under Proposition 57, as amended by Senate Bill No. 1391 (2017-2018 Reg. Sess.), prosecutors may move to transfer the minor from juvenile court to adult criminal court, provided the minor was not under the age of 16 at the time of the offense.  (*O.G.*, at p. 87; *People v. Ramirez* (2021) 71 Cal.App.5th 970, 971-972.)

5

B.     *Retroactivity*

"In order to determine if a law is meant to apply retroactively, the role of a court is to determine the intent of the Legislature, or in the case of a ballot measure, the intent of the electorate." (*Lara, supra*, 4 Cal.5th at p. 307; accord, *People v. Conley* (2016) 63 Cal.4th 646, 656.)  In *Estrada, supra*, 63 Cal.2d 740 at pages 742 to 744, the Supreme Court held that statutory amendments that mitigate punishment for an offense apply retroactively to a petitioner who at the time of enactment had committed the offense but had not yet been sentenced.  The court reasoned, "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act.  It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply.  The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final." (*Id.* at p. 745.)  Thus, under *Estrada*, "'in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not." (*Lara*, at p. 308; accord, *People v. Ramirez, supra*, 71 Cal.App.5th at p. 994.)

Applying this rule in *Lara*, the Supreme Court concluded Proposition 57 constituted an ameliorative change to the criminal law, which the voters intended "'to extend as broadly as

6

possible."' (*Lara, supra*, 4 Cal.5th at p. 309.) Accordingly, Proposition 57 applies retroactively to "all juveniles charged directly in adult court whose judgment was not final at the time it was enacted." (*Lara*, at p. 304.) The *Lara* court remanded for the juvenile court to hold a retroactive transfer hearing to determine whether the defendant would have been fit for treatment under juvenile law, and if so, for the juvenile court to treat the convictions as juvenile adjudications and impose an appropriate disposition. (*Id.* at pp. 310, 313.)

C.     *Vinson Is Entitled to a Retroactive Transfer Hearing under Proposition 57*

Vinson contends, the People concede, and we agree Vinson's judgment was not final at the time Proposition 57 took effect on November 9, 2016 because Vinson's appeal from the sentence imposed after our remand in *Vinson I* was still pending. Because Vinson had not exhausted direct review of his sentence when Proposition 57 was enacted, his case was not yet final for purposes of retroactive application of the law.

In *Vinson II* we rejected Vinson's Proposition 57 argument on the basis Vinson's "judgment of conviction was 'final' for purposes of retrospective application of the changes in state criminal procedures embodied in Proposition 57 when the time for petition for certiorari expired as to his original appeal challenging his conviction," although the appeal of his sentence was still pending. (*Vinson II, supra*, B257225.) However, as subsequent Supreme Court case law has made clear, for purposes of application of the *Estrada* rule of retroactivity to a "'judgment of conviction,'" "the terms 'judgment' and '"sentence"' are generally considered 'synonymous' [citation], and there is no 'judgment of conviction' without a sentence." (*People v.*

*McKenzie* (2020) 9 Cal.5th 40, 46 [defendant was entitled to benefit of ameliorative statute that took effect during the pendency of his appeal from revocation of probation and imposition of a state prison sentence previously suspended because his criminal proceeding was not final under *Estrada* at the time new statute took effect]; accord, *People v. Esquivel,* (2021) 11 Cal.5th 671, 678 [applying *McKenzie* in holding defendant was entitled to benefit of ameliorative statute where he was placed on probation with execution of an imposed state prison sentence suspended because he could still obtain direct review of the order revoking probation and imposing the state prison sentence].)

Thus, the proper question at the time of *Vinson II* was whether Vinson's "criminal prosecution or proceeding concluded before the ameliorative legislation took effect." (*People v. McKenzie, supra*, 9 Cal.5th at p. 46; accord, *People v. Esquivel*, *supra*, 11 Cal.5th at p. 678.) It did not. Because Vinson's appeal challenging his resentencing was pending when Proposition 57 became effective, the criminal proceeding against him had not concluded. Accordingly, his judgment was not final for purposes of retroactivity under *Estrada* when Proposition 57 took effect, and he is entitled to a retroactive transfer hearing in the juvenile court.

Further, the *Lara* court has clarified that the proper approach toward retroactive application of Proposition 57 is for the juvenile court to hold a juvenile transfer hearing, and if the proceeding is not transferred to adult court, the juvenile court should treat the convictions as juvenile adjudications and impose an appropriate disposition. (*Lara, supra*, 4 Cal.5th at pp. 310-311.) The court observed, "'Nothing is to be gained by having a "jurisdictional hearing," or effectively a second trial, in the

juvenile court,'" but rather, "'the potential benefit of a juvenile transfer hearing is that it may, in fact, dramatically alter a minor's effective sentence or "juvenile disposition" for past criminal conduct.'" (*Ibid.*) We grant Vinson's petition for habeas corpus, conditionally reverse his sentence, and direct the superior court to refer the case to the juvenile court to apply Proposition 57 to Vinson's case consistent with this approach.

## DISPOSITION

Vinson's petition for a writ of habeas corpus is granted, and his sentence is conditionally reversed. The case is remanded to the superior court with directions to refer the case to the juvenile court to conduct a juvenile transfer hearing to determine whether it would have transferred the case to adult criminal court had it originally been filed in juvenile court in accordance with current law. If the juvenile court determines it would not have transferred the case to criminal court under current law, it shall treat Vinson's convictions as juvenile adjudications as of the date Vinson was convicted and impose an appropriate disposition. If the juvenile court determines it would have transferred the case to adult criminal court, it shall transfer the case back to the superior court, which shall then reinstate Vinson's sentence.

FEUER, J.

We concur:

PERLUSS, P. J.          SEGAL, J.

9