Filed 4/11/22; certified for partial publication 5/10/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B304140 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA133930) |
| v. | |
| ARMANDO PINEDA, JR., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge. Affirmed.

Jeralyn Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and Allison H. Chung, Deputy Attorney General, for Plaintiff and Respondent.

When defendant and appellant Armando Pineda, Jr.'s (defendant's) previous appeal of his conviction for a murder committed at age 17 was before this court, we conditionally reversed the judgment and remanded with directions to hold a new hearing to decide whether the juvenile court would still transfer defendant to a court of criminal jurisdiction after changes in law made by the Public Safety and Rehabilitation Act of 2016 (Proposition 57). (*People v. Pineda* (2017) 14 Cal.App.5th 469, 483-484 (*Pineda I*).) That was done, and the juvenile court found it would still order transfer. Before the criminal judgment against defendant was reinstated, however, the court of criminal jurisdiction considered and rejected defendant's request that the court exercise discretion, given by another intervening change in the law, to strike a discharge-of-a-firearm-causing-death enhancement (Pen. Code,[1] § 12022.53, subd. (d)) it previously imposed. We are now asked to decide whether the trial court understood the full scope of its discretion and abused that discretion by declining to strike the enhancement. We also consider whether defendant is entitled to retroactive application of yet another change in law recently made by Assembly Bill No. 624 (2021-2022 Reg. Sess.) (AB 624), which authorizes a defendant to appeal—not just pursue appellate writ relief—from a juvenile court's Proposition 57 transfer decision.

I

*Pineda I, supra,* 14 Cal.App.5th 469 summarized the evidence concerning defendant's murder of the victim, Rogelio

---

[1] Undesignated statutory references that follow are to the Penal Code.

2

Islas (Rogelio), and the initial court proceedings. We reproduce that summary and then describe what most recently happened in the trial court.

"On several occasions during the two years that preceded Rogelio's killing, members of the Pineda family (i.e., defendant's family) and the Islas family (i.e., Rogelio's family) argued and, at times, engaged in fisticuffs. Both families lived on the same street in Compton (one house apart), and naturally, each family believed it was in the right and the other family was responsible for the ongoing trouble.

"On the day defendant shot Rogelio in June 2014, trouble began around 2:30 in the afternoon. Defendant, his girlfriend Katherine Bautista (Bautista), and his sister Connie had plans to visit another of defendant's sisters. [Fn. omitted.] They were preparing to leave for the visit in an SUV parked between the Pineda and Islas family homes. Defendant's father, Armando Pineda, Senior (Senior), had arrived home at about the same time, and he drove past Rogelio standing outside his home without incident.

"According to Connie and others in the Pineda family, defendant was in the process of putting his child into a car seat in the SUV when Rogelio insulted defendant and both men then began arguing. Connie and Bautista attempted to convince defendant to stop arguing and get in the SUV—physically holding defendant back at one point. While defendant and Rogelio were arguing, Senior came outside.

"The only eyewitnesses to what happened next were defendant and members of his family; they would later claim Senior pulled a gun on Rogelio and shot him multiple times. But

3

there were several witnesses not associated with either family who heard what happened.

"Oscar Ibarra (Ibarra) lived in the house between the Pineda and Islas homes, and he heard a woman say in a scared voice, "No, Junior. Don't do it," followed by multiple gunshots two or three seconds later. (Because defendant and his father shared the same name, defendant was often called 'Junior.' Defendant's mother also referred to defendant as 'Papa.') Maria Soto, an off-duty police officer who was visiting the home next to the Islas family's house, heard a woman scream 'no, poppy, no' in Spanish and then the sound of shots fired.

"Another neighbor who lived two houses down from the Islas family home, Gustavo Silva (Silva), heard the gunshots and looked out his window. Seconds later, Silva heard Connie frantically say, 'No, Junior. No. You don't do that. Why did you do that?' Silva then saw someone (he could not see who) pushed into a waiting SUV, which then 'burned rubber' driving away from the scene. In the meantime, the other neighbor, Ibarra, had seen defendant run toward the SUV. Although Ibarra could not see defendant enter the vehicle, defendant was no longer in the area after the SUV drove off at high speed.

"When the SUV raced away, defendant, Senior, and Bautista (and defendant's infant daughter) were inside; Connie was left behind. Silva saw Connie get on her cell phone and heard her say: 'Mom, he killed him. He killed him. What do I do?'; and then, 'Junior. Junior. Junior. Junior killed him. What do I do?' [Fn. omitted.] This, however, was not Connie's own account of the phone call. She said she called her mother a minute or two after the shooting and said, 'Mom, my dad just shot the neighbor.' Connie's mother remembered the phone call

4

in the same way, i.e., with Connie identifying her father, not defendant, as the killer.

"Connie also sent text messages after the shooting, including a 3:02 p.m. message to her then-boyfriend. . . . Connie's boyfriend called her back after receiving the text message and she told him 'her dad just shot the neighbor.'  [Fn. omitted.]

"Law enforcement investigation following the shooting determined Rogelio had been shot five times, including two shots that were fatal (one to the back of the head and another to the lower back).  Initially, Connie, Bautista, and defendant's mother did not tell the police that Senior was the culprit in Rogelio's murder.  They advised the police that Senior was the shooter only later, during interviews approximately seven months after the killing.

[¶] . . . [¶]

"At the time of Rogelio's murder, California law allowed prosecutors to file murder charges against a defendant over 16 years old directly in a court of criminal jurisdiction, meaning a court assigned responsibility for adjudicating charges against adult offenders rather than a juvenile court.  (Welf. & Inst. Code, former § 707, subds. (b)(1), (d)(1), added by Stats. 1975, ch. 1266, § 4, p. 3325, as amended by Prop. 21, § 26, approved by voters, Primary Elec. (Mar. 7, 2000).)  Using this 'direct file' procedure, the Los Angeles County District Attorney in October 2014 charged defendant with Rogelio's murder in a court of criminal jurisdiction." (*Pineda I*, *supra*, 14 Cal.App.5th at 472-474.)

After trial, a jury found defendant guilty of second degree murder.  (*Pineda I*, *supra*, 14 Cal.App.5th at 477.)  The jury also found true personal use of a firearm enhancements (§ 12022.53, subd. (b)-(d)) alleged in connection with the murder charge.

5

(*Ibid*.)  The trial court sentenced defendant to an aggregate term of 40 years to life in prison, consisting of 15 years to life for the second degree murder conviction and a consecutive 25 years to life pursuant to the section 12022.53, subdivision (d) enhancement for personally discharging a firearm causing Rogelio's death.  (*Ibid*.)

On appeal, this court conditionally reversed the judgment. (*Pineda I, supra*, 14 Cal.App.5th at 483.)  We held a provision of Proposition 57 that eliminated prosecutors' ability to directly file charges against certain juvenile defendants in a court of criminal jurisdiction—returning instead to a juvenile court "fitness hearing" procedure that previously governed—was an ameliorative change that applied retroactively to him.[2]  (*Id*. at 478, 480; see also *People v. Esquivel* (2021) 11 Cal.5th 671, 675 [summarizing the retroactivity holding in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*): "(i) in the absence of a contrary indication of legislative intent, (ii) legislation that ameliorates punishment (iii) applies to all cases that are not yet final as of the legislation's effective date"] (*Esquivel*).)  *Pineda I* conditionally reversed defendant's conviction and remanded with directions to hold a new fitness hearing for defendant (if the People moved for such a hearing) and to thereafter reinstate the criminal judgment if the juvenile court determined it would still transfer defendant to a court of criminal jurisdiction under prevailing law.  (*Pineda, supra*, 14 Cal.App.5th at 483-484.)

On remand, the juvenile court determined defendant was still an appropriate subject of transfer to a court of criminal

_____

[2]     Our Supreme Court later agreed.  (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 303, 304, 311 (*Lara*).)

jurisdiction. By that time, Senate Bill No. 620 (2017-2018 Reg. Sess.) (SB 620) had taken effect and given trial courts discretion, pursuant to section 1385, to strike a section 12022.53 firearm enhancement when in the interest of justice to do so. (§ 12022.53, subd. (h); Stats. 2017, ch. 682, § 2.)

When back before the criminal trial court, and with the court's permission,[3] defendant filed a "sentencing memorandum" in September 2019 urging the trial court to rely on the discretion conferred by SB 620 to strike the previously imposed section 12022.53, subdivision (d) firearm enhancement. The defense's memorandum argued the court should strike the enhancement in light of defendant's "youth, his history of trauma, the significant progress he has made in prison, and the length of the prison sentenced imposed" by the trial court. Specifically, the memorandum pointed to defendant's "violent and unhealthy" childhood; a psychologist's opinion that defendant suffered from "Other Specified Trauma – or Stressor-Related Disorder"; and defendant's prison record, which did not include any violent

---

[3] The trial court stated: "[T]he court also is aware, since I'm getting a lot of these cases, that there has been a change in the law with regard to the court's discretion on imposing time regarding the gun allegation, and a lot of these cases have been sent back to the court . . . for the court to recognize it has the discretion to not impose the additional time for the gun allegation, and then the court would either impose it or not impose it and that's where we are. [¶] That, technically isn't in front of me—not even 'technically'; it is not in front of me. However, I kind of anticipate something like that coming down the road. So since [defendant] is already here, I'd like to make a record of that now, as opposed to a year or two down the road."

7

incidents and did include participation in rehabilitative programming (including a high school equivalency certificate).

At a hearing held by the trial court where defendant was present and represented by counsel, the trial court expressly "recognize[d] that it ha[d] the discretion to not impose the term of 25-years-to-life for the gun allegation that was found true . . . ." The court ruled it would decline to exercise that discretion, however. Reflecting on its notes of the trial testimony, the court explained defendant's violence was not a "one-time thing" from a "sweet kid that happened to do something totally out of character," but instead part of a history of violent, angry confrontations. The court acknowledged defendant was a "youthful offender" (17, though within weeks of his 18th birthday) at the time of the murder but balanced that against the "particularly egregious, violent crime." The court further found defendant lied during his trial testimony, in which he identified Senior as the murderer. The court concluded: "So while . . . defendant is young, he is not as unsophisticated as perhaps some of these reports might want to paint him as. And while I commend that he is doing things in state prison that perhaps he didn't take advantage of doing while he was out, he certainly has more incentive to do that. [¶] The court, again, has looked at all of these mitigating factors that you are presenting; however, when looking at this case, what happened to this victim, how the defendant chose to act on this day, how he chose to act afterwards, the court is not going to exercise its discretion to strike the 25-to-life [enhancement]."

8

## II

Defendant's argument that the court erred in considering his request for SB 620 relief is unpersuasive. Nothing in the record warrants a departure from the customary presumption that the trial court in this case was aware of and followed applicable law; indeed, the trial court's comments on the record indicate it was well familiar with the discretion recently conferred by law and invited defendant to argue why it should exercise that discretion. Nor does the record establish, when declining to strike defendant's 25-years-to-life firearm enhancement, that the court abused the discretion it was aware it had. The court was entitled to conclude the facts and circumstances of the murder and defendant's history and characteristics outweighed mitigating information presented about defendant's childhood and his efforts at rehabilitation in prison. Finally, as we will explain, defendant is not entitled to retroactively benefit from the new appeal provision enacted as part of AB 624 because it is not an ameliorative measure exempt from the customary presumption that new legislative enactments apply only prospectively.

## A

The several subdivisions of section 12022.53 provide for sentencing enhancements of varying lengths for specified crimes involving a firearm. Subdivision (b) provides for a 10-year enhancement for one who "personally uses a firearm" in commission of the offense; subdivision (c) provides for a 20-year enhancement for one who "personally and intentionally discharges a firearm"; and subdivision (d) provides for an enhancement of 25 years to life for one who "personally and

intentionally discharges a firearm and proximately causes great bodily injury . . . or death . . . ." (§ 12022.53, subds. (b)-(d).) SB 620, which took effect on January 1, 2018, amended section 12022.53 to permit the trial court to strike or dismiss, in the interest of justice and pursuant to section 1385, an enhancement imposed pursuant to the provisions of that section. (§ 12022.53, subd. (h).)

Defendant suggests the trial court did not understand the jury found true three section 12022.53 enhancements, i.e., true findings under section 12022.53, subdivisions (b) and (c) in addition to the 25-to-life enhancement under section 12022.53, subdivision (d). The record does not bear this out. The trial court's on-the-record comments indicate it was quite familiar with what happened at trial and the court (like the defense's "sentencing memorandum" itself) was appropriately focused on whether to strike the section 12022.53, subdivision (d) enhancement because that was the only enhancement that affected defendant's sentence—the subdivision (b) and (c) enhancements that provide for lesser punishment were stayed at sentencing. We accordingly proceed on the usual understanding that the trial court was aware of applicable law and understood the full scope of its discretionary choices. (See, e.g., *People v. Morrison* (2019) 34 Cal.App.5th 217, 225 ["[T]he usual presumption that a sentencing court correctly applied the law will apply and will ordinarily prevent remand where the record is silent as to the scope of a court's discretion"]; see also *People v. Pearson* (2019) 38 Cal.App.5th 112, 117 ["'[U]nless the record affirmatively reflects otherwise,' the trial court is deemed to have considered the factors enumerated in the California Rules of Court"] (*Pearson*).)

On the merits of the trial court's discretionary determination, the court expressly considered all of the factors in mitigation identified by defendant and concluded the 25-to-life enhancement was warranted.[4] We review that determination for abuse of discretion, taking into account the legal principles and policies behind the law that added section 12022.53 to the Penal Code (see, e.g., *People v. Garcia* (2002) 28 Cal.4th 1166, 1172 [legislative intention to protect the citizenry and deter violent crime]) and SB 620's purpose of mitigating overly harsh results that could otherwise obtain from mandatory, inflexible imposition of section 12022.53. (*People v. Carmony* (2004) 33 Cal.4th 367, 377; *People v. Williams* (1998) 17 Cal.4th 148, 161; *Pearson, supra,* 38 Cal.App.5th at 116.)

We hold there was no abuse of discretion. The circumstances of the murder were indeed callous, the court was entitled to conclude from defendant's history that the murder was not entirely aberrant conduct, and the court appropriately considered defendant's disregard for the judicial process as shown by what the court (and jury) saw as his untruthful trial testimony. The trial court understood defendant was just shy of his 18th birthday at the time of the murder and had exhibited good behavior thus far in prison, but the court was within its

---

[4] Defendant argues the trial court "failed to consider" defendant's in-prison conduct. This is belied by the transcript of the pertinent hearing, which indicates the court read and considered the "pretty substantial sentencing memorandum" the defense filed and was aware of defendant's efforts at rehabilitation in prison—even commending him for those efforts while finding they were insufficient to justify striking the section 12022.53 enhancement.

11

discretionary purview to conclude these and the other facts cited as mitigation by the defense did not warrant disturbing the section 12022.53 enhancement.

B

The rule in California is well-settled: new legislation is generally presumed to apply only prospectively. (See, e.g., *In re Friend* (2021) 11 Cal.5th 720, 742; *Lara*, *supra*, 4 Cal.5th at 307.) There is also an established exception, first announced in *Estrada*, *supra*, 63 Cal.2d 740: legislation that is silent on whether it should apply retroactively will be given retroactive effect if it ameliorates punishment. (*Id.* at 745 ["When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply"]; see also *People v. Conley* (2016) 63 Cal.4th 646, 657 ["The *Estrada* rule rests on an inference that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not"].)

Prior to AB 624, which took effect on January 1 of this year, a defendant certified by the juvenile court as fit to be tried in a court of criminal jurisdiction could challenge that determination in the Court of Appeal through a petition for writ relief. (See generally *People v. Superior Court (Rodrigo O.)* (1994) 22

12

Cal.App.4th 1297, 1302.)  Defendant never petitioned for such relief after the juvenile court's fitness determination ordered by this court in *Pineda I*.

Now, after enactment of AB 624, which is codified at Welfare and Institutions Code section 801, a defendant is entitled to immediately appeal from a juvenile court fitness determination.  (Welf. & Inst. Code, § 801 ["An order transferring a minor from the juvenile court to a court of criminal jurisdiction shall be subject to immediate appellate review if a notice of appeal is filed within 30 days of the order transferring the minor to a court of criminal jurisdiction.  An order transferring the minor from the juvenile court to a court of criminal jurisdiction may not be heard on appeal from the judgment of conviction"].)  Defendant argues Welfare and Institutions Code section 801 should apply retroactively to him such that he is now authorized to appeal from the juvenile court determination made several years ago.

We hold the statute does not qualify for the *Estrada* exception to the rule requiring prospective application of new legislation.  Even putting aside the question of whether Welfare and Institutions Code section 801 can be understood to concern punishment (*Esquivel*, *supra*, 11 Cal.5th at 675 [the *Estrada* exception applies to "legislation that ameliorates punishment"]), and even putting aside whether Welfare and Institutions Code section 801's expressed preference for expedited appellate review is an indication that it is not meant to apply retroactively in a case like this, we are of the view that the change in law made by AB 624 is not ameliorative.  As a plurality of our Supreme Court explained in *Powers v. City of Richmond* (1995) 10 Cal.4th 85, the notion that appellate review by extraordinary writ petition is

13

inherently less effective than a remedy by direct appeal is incorrect.[5] (*Id.* at 113-114 (plur. opn. of Kennard, J.).) We agree and hold AB 624 does not apply retroactively to defendant because the new procedural mechanism the Legislature has provided for challenging a fitness determination—an appeal—is no more favorable for defendant than the mechanism that was available before AB 624 that he did not pursue—review by writ petition.

## DISPOSITION

The trial court's order is affirmed.

BAKER, Acting P. J.

We concur:

MOOR, J.

KIM, J.

---

[5] This same point disposes of defendant's contention that declining to apply Welfare and Institutions Code section 801 retroactively to him violates his right to due process of law.

Filed 5/10/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ARMANDO PINEDA, JR.,<br><br>    Defendant and Appellant. | B304140<br><br>(Los Angeles County<br>Super. Ct. No.<br>TA133930)<br><br>ORDER CERTIFYING<br>OPINION FOR<br>PARTIAL<br>PUBLICATION |

Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, it is ordered that all parts of the opinion filed April 11, 2022—except the first paragraph following heading "II" on page 9 and the entire subsection "A" that follows immediately after that paragraph on pages 9 to 12—are certified for publication.

There is no change in judgment.

_____

BAKER, Acting P. J.          MOOR, J.          KIM, J.