Filed 10/24/22 P. v. Villa CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G060700 |
| v. | (Super. Ct. No. 09WF0174) |
| RICARDO ALVAREZ VILLA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Karen L. Robinson, Judge. Reversed and remanded with instructions.

Robert L. Hernandez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Amanda Lloyd, Deputy Attorneys General, for Plaintiff and Respondent.

\*　　\*　　\*

After Ricardo Alvarez Villa pleaded guilty to armed robbery and he spent ten years in prison as a result, the Secretary of the California Department of Corrections and Rehabilitation (CDCR) recommended to the court that his 19-year sentence be recalled and that he be resentenced. The trial court held a hearing and denied the recommendation.

Following the court's ruling, the Legislature changed the law applicable to resentencing proceedings in ways that benefit the prisoners who receive such CDCR recommendations. Consistent with *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), Villa contends that because the new law became effective while his appeal was pending—i.e., before the trial court's denial was final—he is entitled to have his application reconsidered. We agree.

Although the Attorney General does not concede that *Estrada* applies to changes in resentencing laws, he does concede, based on considerations of judicial efficiency, that this case should be remanded for reconsideration in accordance with the new law.

We conclude *Estrada* does apply; we therefore reverse the order and remand the case to the trial court with directions to reconsider the CDCR's recommendation in accordance with the new law.

## FACTS

The facts of this case are not disputed. In June 2010, Villa pleaded guilty to second degree robbery, arising out of an incident in which he entered a restaurant with

2

a handgun, approached the counter area, ordered an employee to the ground, and proceeded to steal cash out of two registers and from another employee before exiting.

Villa also admitted a firearm enhancement, one strike prior, and a prior felony conviction which subjected him to a five-year enhancement. The court dismissed other charges, including second degree burglary and a second strike prior.

Villa was sentenced to 19 years in state prison; four years for robbery (two-year low term doubled due to the strike prior), a five-year enhancement for the prior, and ten years for the firearm enhancement.

In October 2019, the CDCR sent a letter to the court pursuant to former Penal Code[1] section 1170, subdivision (d)(1) (former section 1170(d)(1)), in which it recommended Villa's sentence be recalled and that he be resentenced. The CDCR regulations in effect at the time provided that inmates may be recommended for resentencing "if their behavior while incarcerated demonstrates sustained compliance with departmental regulations, rules, and requirements, as well as prolonged participation in rehabilitative programing" (Cal. Code Regs., tit. 15, § 3076.1, subd. (b)(1)), and when "the applicable sentencing laws at the time of their sentencing hearing are subsequently changed due to new statutory or case law authority with statewide application" (*id.*, subd. (d)(1)).

The CDCR included several documents with its letter, including Villa's Rehabilitative Achievement Credits, his work assignments and Milestone Completion Credits, and his disciplinary record. The CDCR's letter also highlighted a change in the law since Villa's sentencing which gave the court discretion to strike Villa's enhancements.

Former section 1170(d)(1) provided that, in deciding the issue, "[t]he court may consider postconviction factors, including, but not limited to, the inmate's

---

[1]     All further statutory references are to this code.

disciplinary record and record of rehabilitation while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the inmate's risk for future violence, and evidence that reflects that circumstances have changed since the inmate's original sentencing so that the inmate's continued incarceration is no longer in the interest of justice."

In July 2021, Villa filed a motion for resentencing pursuant to former section 1170(d)(1), asking the court to recall his sentence as recommended by the CDCR and to exercise its discretion to strike the enhancement imposed against him pursuant to section 667, subdivision (a). Villa pointed to evidence of his exemplary conduct while in prison, including his work history, his educational achievements and self-improvement efforts, as well as his strong family support and his "re-entry" plan.

The District Attorney opposed the motion. While acknowledging that Villa's conduct in prison had been "admirable," the prosecutor argued the 19-year sentence was fair and appropriate for the crimes committed. He acknowledged that, under current law, Villa could have been sentenced to a minimum term of two years, but he argued it was more appropriate to compare the sentence imposed to the maximum sentence possible—41 years to life.

The court held a hearing and denied the motion. It commended Villa for the work he had done to rehabilitate himself while in prison and commented on the strong family support that had been demonstrated. The court nonetheless concluded Villa's original sentence was appropriate in light of the crime committed and Villa's criminal history. The court commented that "it was not uncommon in 2010 for a third striker to get a life sentence when the current offense was a serious and violent felony committed with a gun" and "[c]ertainly in 2006 you were a dangerous person."

On January 1, 2022, while this case was pending on appeal, Assembly Bill No. 1540 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 719) took effect. (See Cal. Const., art. IV, § 8; Gov. Code, § 9600, subd. (a).) The bill moved the recall and resentencing

4

provision of former section 1170(d)(1), to the newly created section 1170.03, and also revised the terms of that provision. (Stats. 2021, ch. 719, § 3.1.) Effective June 30, 2022, the Legislature passed Assembly Bill No. 200 (2021-2022 Reg. Sess.) to, among other things, renumber section 1170.03 as section 1172.1 with no change in the text. (Stats. 2022, ch. 58, § 9.)

Newly enacted section 1172.1 requires a court to "apply any changes in law that reduce sentences or provide for judicial discretion" when resentencing under the recall statute. (§ 1172.1, subd. (a)(2).) The statute requires a court to state its reasons on the record for granting or denying recall and resentencing. (*Id.*, subd. (a)(6).) "Resentencing shall not be denied . . . without a hearing . . . ." (*Id.*, subd. (a)(8).)

Additionally, the new statute provides that where, as here, the recall request is initiated by the CDCR, the superior court must apply a presumption in favor of recall that can be overcome only by a finding that the defendant poses an unreasonable risk to public safety, as defined in section 1170.18, subdivision (c). (§ 1172.1, subd. (b)(2).)

## DISCUSSION

In *Estrada*, the Supreme Court held that where the Legislature passes a statute reducing the punishment for a specified crime, but does not state whether the old or the new law applied to pending cases, "[i]t is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply." (*Estrada, supra,* 63 Cal.2d at p. 745.) The court "reasoned that when the Legislature determines that a lesser punishment suffices for a criminal act, there is ordinarily no reason to continue imposing the more severe penalty, beyond simply "'satisfy[ing] a desire for vengeance.'"" (*People v. Conley* (2016) 63 Cal.4th 646, 656, quoting *Estrada, supra*, at p. 745.) Thus, the Supreme Court concluded that in the absence of a contrary intent stated by the Legislature, a new statute ameliorating

5

punishment for a crime would apply in every case where "the judgment convicting the defendant of the act is not final." (*Estrada, supra,* at p. 745.)

The Attorney General contends that since the judgment convicting Villa is final, *Estrada* does not apply. However, as the Supreme Court explained last year in *People v. Esquivel* (2021) 11 Cal.5th 671 (*Esquivel*), that aspect of *Estrada* is not intended to be interpreted so rigidly. In *Esquivel*, the defendant's conviction, including the sentence imposed, was already final when the court later revoked his probation and ordered him to serve the prison term that was initially stayed. It was during the defendant's appeal from the probation revocation order that the Legislature changed the law that governed the effect of the defendant's prior strikes on his sentence. Although the prosecutor argued that *Estrada* did not apply because the sentence was final, the Supreme Court disagreed.

As the Supreme Court explained, "*Estrada* presumed that our Legislature intends for ameliorative enactments *to apply as broadly as is constitutionally permissible*." (*Esquivel, supra*, at p. 677, italics added.) And "[t]he significance of finality was that legislation 'constitutionally could apply' to nonfinal judgments." (*Ibid.*) The court reasoned that "[p]resumably, *Estrada* understood finality to trigger at least a potential constitutional restraint (i) on the Legislature's power to intervene in judicial decisionmaking or (ii) on the judiciary's power to affect matters that were no longer pending. But any constraint on the Legislature's power to affect 'final' criminal judgments would appear to arise from the conclusion of a criminal proceeding as a whole." (*Id*. at p. 678.) Consequently "the role of finality in *Estrada's* reasoning counsels against importing a rigid understanding of the term 'final' into this context. (*Id*. at p. 677.)

Here, as in *Esquivel*, Villa's sentence was final, but subsequent events—in *Esquivel* it was the defendant's apparent violation of probation, and in this case, the CDCR's recommendation that Villa's sentence be recalled—effectively reopened the

6

issue for the court's further consideration. When that happened, it presented a new opportunity for the Legislature's ameliorative enactment to be applied. And under *Estrada* and *Esquivel*, it must be.[2]

In closing, we note the application of *Estrada* to this situation should produce the same result as the Attorney General's proposed concession. Key to the Attorney General's suggestion that considerations of "judicial efficiency" would justify a reversal and remand was the notion that if we do not remand the case to the trial court for reconsideration in light of the new law, the CDCR could "simply re-initiate[] the recall request now that AB 1540 is in effect" and precipitate a reconsideration of the issue that way. We agree.

Thus, the Attorney General's position seems to be that every case in which the CDCR's resentencing recommendation was considered by the trial court under the old law should be remanded by the appellate court for reconsideration under the new law because the CDCR can simply reissue its recommendation to trigger a reconsideration under the new law. In our view, *Estrada* provides the better rationale for a policy of reversing and remanding cases such as this.

---

[2]     We recognize this case can be distinguished from *Esquivel* (and *Estrada*) since they involved primary sentencing laws, while this case involves a resentencing law. But we find no significance in the distinction. In both cases, the Legislature determined it was appropriate to give the defendant some greater benefit or leniency than was previously extended to other defendants under the same circumstances. We cannot perceive any reason why the Legislature would not broadly apply the new rule in the resentencing context, just as it presumptively does in the initial sentencing context.

## DISPOSITION

The postjudgment order is reversed, and the case is remanded to the trial court with directions to reconsider the motion in light of section 1172.1.


GOETHALS, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


SANCHEZ, J.

8