Filed 3/8/23  Hernandez v. Super. Ct. CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MATTHEW HERNANDEZ, | F084917 |
| Petitioner, | (Super. Ct. No. BF166977A) |
| v. | |
| THE SUPERIOR COURT OF KERN COUNTY, | **OPINION** |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

<u>**THE COURT**</u>*

ORIGINAL PROCEEDINGS; petition for writ of prohibition.  Chad A. Louie, Judge.

Peter Kang, Public Defender, and Nick Roth, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jeffrey A. White, Deputy Attorneys General, for Real Party in Interest.

-ooOoo-

---

* Before Poochigian, Acting P. J., Peña, J. and Snauffer, J.

Petitioner Matthew Hernandez was held to answer on five criminal charges and enhancement allegations that he committed counts 1 through 3 for the benefit of a criminal street gang. Approximately five years later, before a trial was held in petitioner's case, Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333) modified the elements of proof required for a gang enhancement allegation. Petitioner filed a motion to set aside the portion of the information containing the gang allegations. The trial court denied the motion and petitioner filed the instant petition for writ of prohibition. We issued an order to show cause why the relief petitioner seeks should not be granted.

In his petition, petitioner asks us to order the trial court to set aside its prior ruling on his motion and enter an order setting aside the gang enhancement allegations. The parties agree that the evidence presented in the preliminary hearing is insufficient to hold petitioner to answer on the gang enhancement allegations in light of the modifications brought about by Assembly Bill 333. However, the People, real party in interest, argue that the appropriate remedy is to set aside the court's order denying petitioner's motion and remand the matter to allow the prosecution to prove the gang enhancement allegations to the standard required by Assembly Bill 333. We vacate the portion of the magistrate judge's holding order holding petitioner to answer on the gang enhancement allegations and remand the matter with directions to permit the prosecutor an opportunity to prove the gang enhancement allegations to the standard required by Assembly Bill 333.[1]

---

[1] Petitioner also contends that the proof offered at the preliminary hearing was insufficient to prove the gang enhancement allegation to the pre-Assembly Bill 333 standard. Because we conclude that Assembly Bill 333 is retroactive to petitioner's case and we accept the People's concession that the evidence presented at the preliminary hearing is insufficient to meet the standard set out in Assembly Bill 333, we need not resolve petitioner's contention regarding the sufficiency of the evidence under the pre-Assembly Bill 333 standard or the People's contention that the portion of petitioner's motion that addressed that issue was untimely.

## PROCEDURAL SUMMARY

On January 24, 2017, the Kern County District Attorney filed a criminal complaint charging petitioner with two counts of possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1);[2] counts 1 & 2), possession of ammunition by a felon (§ 30305, subd. (a)(1); count 3), resisting arrest (§ 148, subd. (a)(1); count 4), and public intoxication (§ 647, subd. (f); count 5). The complaint further alleged, as to counts 1 through 3, that petitioner committed the offenses for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).[3]

On February 6, 2017, petitioner was held to answer on all counts and enhancement allegations.

On February 14, 2017, the Kern County District Attorney filed an information alleging the same counts and enhancement allegations set out in the complaint. The information also alleged that petitioner had suffered a prior felony "strike" conviction within the meaning of the "Three Strikes" law. (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), which also qualified as a prior serious felony conviction (§ 667, subd. (a)).

On July 19, 2022, petitioner filed a motion to set aside all gang enhancement allegations contained in the information pursuant to section 995. He argued, in relevant part, that insufficient evidence was presented at the preliminary hearing to support the gang allegation enhancements under section 186.22, in light of the amendments made by

---

**2** All further statutory references are to the Penal Code.

**3** The complaint and information further alleged that petitioner had served prior prison terms for offenses that were not sexually violent offenses. Effective January 1, 2020, Senate Bill No. 136 (2019–2020 Reg. Sess.) amended section 667.5, subdivision (b) to limit application of prior prison term enhancements to only prior prison terms that were served for sexually violent offenses as defined by Welfare and Institutions Code section 6600, subdivision (b). (§ 667.5, subd. (b).) (Stats. 2019, ch. 590, § 1.) The limited record before us does not reveal whether those prior prison term allegations have been dismissed.

Assembly Bill 333, to support a reasonable belief that (1) the criminal street gang engaged in a pattern of criminal gang activity because the predicate gang offenses took place more than three years prior to the charged offenses and (2) the firearm possession offenses provided more than a reputational benefit to the criminal street gang.

On August 30, 2022, the trial court denied petitioner's motion, reasoning in part that the amendments to section 186.22 made by Assembly Bill 333 did not apply in the context of evaluating whether sufficient cause existed to hold petitioner to answer on the gang enhancement allegations because they were not in effect at the time of the magistrate judge's holding order.

On September 9, 2022, petitioner filed the instant petition.

## PRELIMINARY HEARING[4]

On January 17, 2017, at approximately 8:45 p.m., City of Bakersfield Police Officers John Bishop and Frank McIntyre were assigned to the gang unit and on patrol in their marked patrol vehicle. Their patrol was in the area of two recent homicides. As they patrolled, they received a call regarding shots fired in the area and a person with a firearm at a nearby park. As they drove, they saw petitioner—wearing black or dark grey pants, a camouflage jacket, "five or six shirts of multiple colors," and black gloves—walking in the roadway and illuminated him with their spotlight. Petitioner ran. Both officers identified themselves as police officers and told petitioner to stop running. Petitioner did not stop running. The officers gave chase. As petitioner ran, both officers saw him manipulating items in the front of his waistband and jacket. As the officers continued to follow petitioner, they saw petitioner discard a black item into an alley. The alley was later searched, and other officers recovered a loaded, black nine-millimeter semiautomatic firearm.

---

**4** Our summary of the evidence presented at the preliminary hearing is limited to the facts necessary to resolve the issues present in petitioner's petition. It is not a comprehensive summary of the evidence presented at the preliminary hearing.

After discarding the nine-millimeter firearm, petitioner continued to run. As he ran through a dirt lot, he discarded a silver item. From that area, McIntyre later recovered a loaded, silver .22-caliber semiautomatic firearm.

Petitioner continued to run, fell once, and appeared to strike his head. Officers eventually apprehended petitioner. The entire encounter lasted no longer than two minutes. In his possession, they found two cans of alcohol and a pouch containing nine-millimeter, .22-caliber, and 12-gauge ammunition. Petitioner appeared to be intoxicated—his eyes were red and watery; his speech was thick and slurred; and officers detected the odor of alcohol on his breath and person.

City of Bakersfield Police Officer Nestor Barajas testified as a gang expert at the preliminary hearing. He spoke to known gang members and was familiar with the Loma Bakers criminal street gang. He had contacted at least three Loma Bakers gang members. When he contacted Loma Bakers gang members, he spoke to them about the crimes they had already been convicted of and other crimes committed by Loma Bakers gang members. They normally admitted to carjackings, car theft, and other property theft. They also normally attributed more serious crimes like shootings, burglaries, robberies, and murder to the gang itself. They acknowledged engaging in illegal gun possession and narcotic sales. The Loma Bakers gang claimed a gang turf that included the area where petitioner was arrested. The Loma Bakers gang had a hierarchy descending from "shot callers," to "foot soldiers," and then "messengers." The gang was affiliated with the larger criminal street gangs the "Sureños" or "La Eme." Loma Bakers "shot callers" normally answered to "somebody higher" in the Sureños or La Eme. Those gangs all identified with the number 13 and the colors dark blue and navy blue.

Barajas testified that petitioner had tattoos on his body that indicated his association with the Loma Bakers gang. He had a tattoo on his right lower leg that read "LBKS" and a tattoo of the word "Bakers" on the front of his torso, both of which referred to the Loma Bakers street gang; a tattoo on his right upper arm that read "13,"

5.

indicating his association with the Sureños or La Eme; a tattoo of the words "Loma Gage" on his back, the letter "G" on his right hand, and a joker or jester on one of his arms with the words "Gage Street," all relating to the Gage Street subset of the Loma Bakers street gang; and a tattoo of the word "Loma" on his lower left leg, referring to the Loma Bakers street gang. The Loma Bakers often also used the words, "Loma," "Loma Bakers," "LBKS," and "Gage Street" in their graffiti.

Barajas testified regarding prior crimes by Loma Bakers gang members. He testified that on December 6, 2012, Carlos Bojorquez was arrested for gang participation and possession of a firearm and ammunition after officers received a report that a person was trespassing. Bojorquez was noted to have gang tattoos and was arrested "just northwest of the border of the traditional boundaries" of the Loma Bakers street gang. Based on that evidence, Barajas opined that Bojorquez was an active member of the Loma Bakers street gang at the time of his arrest. Bojorquez eventually pled no contest to possession of a firearm.

On April 30, 2011, officers responded to the shooting of a 16-year-old boy who later died. Officers determined Emmanuel Toscano robbed the 16-year-old boy and later shot him. Toscano had gang tattoos relating to the Loma Bakers street gang and the Hillside subset of the Loma Bakers street gang. Barajas opined that Toscano was an active member of the Loma Bakers street gang on the date he committed the offenses. Toscano was convicted of murder, robbery, shooting at a dwelling, and gang participation.

On August 28, 2016, petitioner, Michael Gonzales (who Barajas opined was an active Loma Bakers street gang member based on his gang tattoos), and three women were in a vehicle that attempted to evade law enforcement officers in a location very near to the location of the charged offenses in this case. The vehicle eventually came to a stop and the occupants fled. A loaded firearm was found discarded near the vehicle. Barajas opined that petitioner's presence in a vehicle with a Loma Bakers street gang member, in

6.

Loma Bakers territory, in possession of a firearm which was a primary activity of the Loma Bakers street gang, all suggested that petitioner was an active Loma Bakers street gang member.

On August 29, 2015, petitioner was contacted by law enforcement in the same area. Petitioner possessed a concealed knife, dirk, or dagger. Possession of weapons was a primary activity of the Loma Bakers street gang.

In the present case, petitioner possessed two firearms while in Loma Bakers territory and fled from law enforcement officers. Based on the present incident and the 2015 and 2016 incidents, Barajas opined that petitioner was an active member of the Loma Bakers street gang.

Barajas opined that a felon, who was also a member of the Loma Bakers street gang, had Loma Bakers tattoos, possessed two firearms within Loma Bakers territory, and fled from officers trying to make contact with him would illegally possess the firearms for the benefit of the Loma Bakers street gang because it instills fear in rival gang members and the general public, which benefits the gang by making it less likely that they will report crimes. Displaying gang tattoos also benefitted the gang.

## DISCUSSION

### I. Statutory Background of Gang Enhancements

" 'In 1988, the Legislature enacted the California Street Terrorism Enforcement and Prevention Act (STEP Act; § 186.20 et seq.) to eradicate "criminal activity by street gangs." ' [Citation.] Among other things, the STEP Act created 'a sentencing enhancement for a felony committed "for the benefit of, at the direction of, or in association with any criminal street gang" (§ 186.22, subd. (b)(1)).' " (*People v. Tran* (2022) 13 Cal.5th 1169, 1205–1206 (*Tran*).) To prove the existence of a criminal street gang necessary to sustain a gang enhancement, the People must establish, among other things, that the members of the association or group in question engage in, or have engaged in, a "pattern of criminal gang activity." (§ 186.22, subd. (f).)

In 2021, the Legislature passed Assembly Bill 333, also known as the STEP Forward Act of 2021, which went into effect on January 1, 2022.  (Stats. 2021, ch. 699, § 1.)  As detailed by our Supreme Court in *Tran*, "Assembly Bill 333 made the following changes to the law on gang enhancements[, among others]:  First, it narrowed the definition of a 'criminal street gang' to require that any gang be an 'ongoing, *organized* association or group of three or more persons.'  (§ 186.22, subd. (f), italics added.)  Second, whereas section 186.22, former subdivision (f) required only that a gang's members 'individually *or* collectively engage in' a pattern of criminal activity in order to constitute a 'criminal street gang,' Assembly Bill 333 requires that any such pattern have been '*collectively* engage[d] in' by members of the gang.  (§ 186.22, subd. (f), italics added.)  Third, Assembly Bill 333 also narrowed the definition of a 'pattern of criminal activity' by requiring that (1) the last offense used to show a pattern of criminal gang activity occurred [within three years of the prior offense and] within three years of the date that the currently charged offense is alleged to have been committed; (2) the offenses were committed by two or more gang 'members,' as opposed to just 'persons'; (3) the offenses commonly benefitted a criminal street gang; and (4) the offenses establishing a pattern of gang activity must be ones other than the currently charged offense.  (§ 186.22, subd. (e)(1), (2).)  Fourth, Assembly Bill 333 narrowed what it means for an offense to have commonly benefitted a street gang, requiring that any 'common benefit' be 'more than reputational.'  (§ 186.22, subd. (g).)"  (*Tran*, *supra*, 13 Cal.5th at p. 1206.)

## II.  Retroactive Application of Assembly Bill 333

The parties agree, as do we, that Assembly Bill 333 applies retroactively pursuant to *In re Estrada* (1965) 63 Cal.2d 740, to all cases not yet final on appeal.  (*Tran*, *supra*, 13 Cal.5th at pp. 1206–1207.)  Pursuant to *Estrada*, absent contrary legislative intent, ameliorative changes in law apply to all cases not yet final on appeal.  (*People v. Esquivel* (2021) 11 Cal.5th 671, 675.)  " 'Assembly Bill 333 essentially adds new elements to the substantive offense and enhancements in section 186.22—for example, by requiring

8.

proof that gang members "collectively engage" in a pattern of criminal gang activity, that the predicate offenses were committed by gang members, that the predicate offenses benefitted the gang, and that the predicate and underlying offenses provided more than a reputational benefit to the gang ….' [Citations.] These changes have the effect of 'increas[ing] the threshold for conviction of the section 186.22 offense and the imposition of the enhancement' …." (*Tran*, at p. 1207.)

## III. Section 995 and Writ of Prohibition as Procedural Vehicles to Enforcing the Changes to Section 186.22

At a preliminary hearing, a magistrate determines whether there is "sufficient cause" to believe a defendant is guilty of all offenses and enhancements charged. (§ 871; see § 872, subd. (a).) This is a threshold determination for allowing the prosecution to proceed to trial against the defendant on those allegations. The mechanism for challenging a magistrate's sufficient cause determination is a motion to set aside or dismiss under section 995. Denial of a section 995 motion is most appropriately challenged by a petition for writ of prohibition. (§ 999a; see *Hudson v. Superior Court* (2017) 7 Cal.App.5th 999, 1006.)

## IV. Analysis

At the time of the preliminary hearing, the magistrate judge determined there was sufficient cause to believe the gang enhancement allegations were true based on the pre-Assembly Bill 333 version of section 186.22. In considering petitioner's section 995 motion, the trial court declined to consider whether the evidence presented at the preliminary hearing was sufficient to meet the requirements of section 186.22 as amended by Assembly Bill 333. That determination was erroneous. The court should have considered the merits of petitioner's motion.

Because "following the denial of a section 995 motion, we review the preliminary hearing magistrate's determination directly and disregard the judge's section 995 ruling," we must determine whether the evidence submitted at the preliminary hearing was

9.

sufficient to hold petitioner to answer on the gang enhancement allegations under section 186.22 as amended by Assembly Bill 333. (See *People v. Ramirez* (2016) 244 Cal.App.4th 800, 813.) As the parties agree, no evidence was submitted at the preliminary hearing regarding how the predicate offenses benefitted the Loma Bakers street gang in a manner that was "more than reputational" (§ 186.22, subd. (g)), nor was it proved that "the last of those offenses occurred within three years of the prior offense" (§ 186.22, subd. (e)(1))—the predicate offenses for which evidence was submitted occurred in 2011, 2012, and 2016. Petitioner contends that the failures of proof were more extensive. However, because we agree with the parties that the proof submitted was insufficient to meet at least the two requirements described above of section 186.22 as amended by Assembly Bill 333, we need not detail all the failures of proof. The portion of the holding order holding petitioner to answer on the gang enhancement allegations must be vacated and the matter remanded. On remand, the prosecution may request continuation of the preliminary hearing pursuant to section 995a, subdivision (b)(2). (See *People v. Lopez* (2021) 73 Cal.App.5th 327, 346; *People v. Eagle* (2016) 246 Cal.App.4th 275, 280 ["When a statutory amendment adds an additional element to an offense, the prosecution must be afforded the opportunity to establish the additional element upon remand."].) If the prosecution does not seek continuation of the preliminary hearing, or does not prove the gang enhancement allegations in conformity with section 182.66 as modified by Assembly Bill 333 during a continuation of the preliminary hearing, the matter shall proceed on an amended information without the gang enhancement allegations.

## **DISPOSITION**

The portion of the magistrate judge's holding order holding petitioner to answer on the gang enhancement allegations on counts 1 through 3 is vacated and the matter is remanded. On remand, the prosecution may request continuation of the preliminary hearing pursuant to section 995a, subdivision (b)(2) to prove the gang enhancement

allegations in compliance with the requirements of section 186.22 as amended by Assembly Bill 333. Alternatively, the prosecution may elect to proceed on an amended information without the gang enhancement allegations. We do not disturb the magistrate judge's holding order in any other respect.