Filed 2/1/24  P. v. Tapia CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MAGGIE RENEE TAPIA,<br><br>        Defendant and Appellant. | A166453<br><br>(Del Norte County<br>Super. Ct. Nos. CRF20-9170,<br>CRF22-9383) |

In 2021, defendant Maggie Tapia was sentenced under a plea agreement to the upper term of three years in prison for unlawful possession of ammunition, and the trial court suspended execution of sentence and placed her on probation.  The following year, under another plea agreement, she pled guilty to possession of methamphetamine for sale and admitted to violating probation in the first case.  The court executed the previously suspended three-year term and imposed a concurrent term of two years, the midterm, for the drug offense.

On appeal, Tapia claims she is entitled to resentencing under Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill No. 567), which amended Penal Code[1] section 1170 to alter a trial court's discretion to choose the lower,

_____

[1] All further statutory references are to the Penal Code unless otherwise noted.

1

middle, or upper term. As the parties agree, the legislation retroactively applies to matters, like Tapia's, "in which a defendant is placed on probation with execution of an imposed state prison sentence suspended . . . if the defendant may still timely obtain direct review of an order revoking probation and causing the state prison sentence to take effect." (*People v. Esquivel* (2021) 11 Cal.5th 671, 673 (*Esquivel*).) Here, however, the trial court believed it was required to execute the three-year term, and the record does not clearly indicate the court would have concluded the upper term was appropriate if it had understood its new discretion. Thus, we remand for Tapia to seek resentencing under Senate Bill No. 567.

## I.
### FACTUAL AND PROCEDURAL BACKGROUND

In March 2020, Tapia brought her three-year-old son to the emergency room with a spiral fracture of his femur.[2] Tapia reported that the injury occurred accidentally when her son was jumping on the bed, but the treating physician's assistant believed the fracture was "incongruent" with Tapia's story. The hospital reported the incident to the police and child protective services, and Tapia was arrested and taken into custody.

Shortly after arriving at jail, Tapia called her sister, who lived in the same Crescent City apartment complex as Tapia did. Tapia was recorded telling her sister to go to Tapia's apartment and remove "the gun and the things that go with it" before the authorities arrived. Two police officers contacted the sister, who gave them several bullets she stated she had just taken from Tapia's apartment. Eventually, the sister admitted she had also removed a handgun from Tapia's apartment, and she gave the officers that

---

[2] The facts in this paragraph are drawn from the preliminary hearing, which Tapia stipulated to as the factual basis for her plea.

2

gun, which was loaded. A subsequent search of Tapia's apartment uncovered a small plastic bindle with methamphetamine residue on it and "a makeshift methamphetamine bong."

In April 2020, Tapia was charged by information in case No. CRF20-9170 (Case A) with felony counts of corporal injury to a child, unlawful possession of a firearm, and unlawful possession of ammunition, and a misdemeanor count of possession of drug paraphernalia.[3] The charges of unlawfully possessing a firearm and ammunition were based on three prior convictions for drug offenses.[4] That November, under a plea agreement, Tapia pled guilty to unlawful possession of ammunition, admitting the three prior convictions supporting that count, and an amended misdemeanor count of child endangerment.[5] Tapia was presumptively ineligible for probation based on the prior convictions (see § 1203, subd. (e)(4)), but she reserved the right to argue for probation. The parties agreed to "a midterm lid" of two years if she was sentenced to prison but an open plea allowing a term of up to three years if she received probation.

---

[3] The felony charges were brought under sections 273d, subdivision (a) (corporal injury to child), 29800, subdivision (a)(1) (unlawful possession of firearm), and 30305, subdivision (a)(1) (unlawful possession of ammunition), and the misdemeanor charge was brought under Health and Safety Code section 11364. It was alleged in connection with the child-abuse count that Tapia personally inflicted great bodily injury on her son.

[4] Specifically, it was alleged that Tapia had a 2012 conviction under Health and Safety Code section 11378 for possession of a controlled substance for sale, a 2013 conviction for the same offense, and a 2013 conviction for transportation of a controlled substance under Health and Safety Code section 11379.

[5] The felony child-abuse count was amended to a misdemeanor count of child endangerment under section 273a, subdivision (a). The remaining counts were eventually dismissed.

At the January 2021 sentencing hearing, Tapia's trial counsel argued that Tapia should be granted probation, because she had remained crime-free for most of her life, had a nearly two-year-old daughter still in her care, and had made exemplary progress since her arrest in addressing her methamphetamine addiction. A counselor from Tapia's substance-abuse program reported that Tapia "wasted no time getting enrolled and engaged" in the program, had never "come in under the influence or with a bad attitude or anything that would signify . . . that she would be a risk to [the] community," and was "an asset to [the program] and a peer leader to others." Tapia read a statement saying that she had been sober for almost 300 days, and she asked for the chance to continue treating her drug addiction instead of being sent to prison. She also described the stressors that led to her addiction, including spending much of her teenage years in foster care and dealing with a breast-cancer diagnosis and her brother's murder.

The prosecutor did not argue against probation, recognizing that Tapia had received "phenomenal letters" supporting her. But the probation officer urged the trial court not to grant probation. He emphasized that Tapia was previously unsuccessful on both probation and mandatory supervision, and he argued that "glowing personal reference letters and ten months of sobriety after committing her fourth felony offense . . . [did not] qualif[y] as unusual circumstances to overcome a presumption of ineligibility [for probation]."

On the subject of what term was appropriate for the ammunition-possession offense if the trial court granted probation, Tapia's trial counsel "encourage[d] the court to put the three-year [upper] term hanging over [Tapia's] head as an executed sentence suspended so that she knows that she does not have any chances." The prosecutor, in contrast, stated that "[i]f the court does decide to grant probation, it's probably not in [Tapia's] best

4

interest to do execution suspended just because her slip-ups in the future are likely to be [a] drug-related positive urine test here, something that a drug court would help her out with. So with execution suspended, the thought is you mess up once, you go to prison. That's probably not appropriate in this case."

The trial court granted probation. The court first found that a factor overcoming the presumption of ineligibility was that the ammunition-possession offense was less serious than the prior drug offenses. (See Cal. Rules of Court, rule 4.413(c)(1)(B).)[6] The court then found that "several" criteria under rule 4.414 warranted probation, including Tapia's "[c]lear willingness to comply" with the terms of probation, the effect of her imprisonment on her young daughter, her remorsefulness, and the court's belief that "she will [not] be a danger to society or to others." (See rule 4.414(b)(3), (5), (7)–(8).)

The trial court also agreed with Tapia's trial counsel that the three-year upper term for the ammunition-possession offense was appropriate. It found as aggravating factors under rule 4.421(b)(3) and (5) that Tapia had served prior terms in jail under section 1170, subdivision (h), and she did not perform well on probation and mandatory supervision, and it found no mitigating factors under rule 4.423.

On January 28, 2021, after continuing the sentencing hearing, the trial court placed Tapia on probation for four years with the condition that she serve 120 days in jail. It imposed the three-year upper term for ammunition possession and a concurrent term of 120 days for child endangerment, with execution of sentence suspended. Tapia said she understood that if she violated probation, she "[could] get the whole three years."

---

[6] All further rule references are to the California Rules of Court.

About a year later, in April 2022, the probation department filed a petition to revoke probation on the basis that Tapia had recently tested positive for methamphetamine three times. That July, Tapia was charged in case No. CRF22-9383 (Case B) with felony counts of possession of methamphetamine for sale and transportation of methamphetamine, as well the infraction of driving an unregistered vehicle.[7] The new charges were based on an incident during which Tapia was found "in possession of 35.9 grams of methamphetamine" and "a scale that had some trace amounts of methamphetamine on it," as well as about $800 in cash. When a law enforcement officer "said, 'I thought you were done with the drug scene,' [Tapia] said something to the effect . . . that she has to pay bills somehow."[8]

In August 2022, under a plea agreement, Tapia pled guilty in Case B to possession of methamphetamine for sale. She also admitted that she violated probation by testing positive for methamphetamine three times. In exchange, it was agreed that she would receive a sentence of no longer than three years, the term already imposed for ammunition possession in Case A, because the term for methamphetamine possession would be concurrent. The remaining charges in Case B were dismissed.

Before the October 2022 sentencing hearing, Tapia, now represented by new trial counsel, filed a motion to vacate the plea in Case B. On appeal, Tapia does not challenge the denial of that motion, but we discuss the related dialogue that occurred at the hearing because it shows that the trial court

---

[7] The charges were brought under Health and Safety Code sections 11378 (possession of methamphetamine for sale) and 11352, subdivision (a) (transportation of methamphetamine), and Vehicle Code section 4000, subdivision (a)(1) (driving infraction).

[8] The quoted language in this paragraph is from the prosecutor's statement of the factual basis for Tapia's plea in Case B.

and the parties believed the court had no choice but to execute the previously imposed three-year term for ammunition possession in Case A.

Tapia testified that she signed the plea form in Case B because she thought she "would be in trouble" if she did not, and she stated that she "did not know that [she] was signing for . . . the aggravated term." During questioning, the trial court asked her, "You did understand that you were already on . . . execution suspended [¶] . . . [¶] before?," and it then stated, "You already had three years [¶] . . . [¶] on the previous matters. And pleading to this didn't get you any more time at all."

After Tapia testified, the prosecutor examined Tapia's original trial counsel, who described her communications with Tapia about the plea in Case B. At one point, the following exchange occurred:

| [PROSECUTOR]: | So I would imagine you alleviated any concerns or at least attempted to? |
|---|---|
| [COUNSEL]: | I thought I did. And [Tapia] did seem confused about what execution of sentence suspended meant and that three-year lid. |
| | So I, again, explained to her that there wasn't really anything we could do about the execution [of] sentence suspended, but she would not be getting any additional time under the plea deal. |
| [PROSECUTOR]: | So basically, you went over with [Tapia], again, that she was getting a good deal? |
| [COUNSEL]: | Yes. |
| [PROSECUTOR]: | And that—I guess theoretically, it's impossible to get a better deal than three years when you already have a three-year sentence? |

7

[COUNSEL]:          I guess anything is always possible.  But I couldn't conceive of it at this point.

Later, the prosecutor asked Tapia's original counsel, "Would it have been reasonable for you . . . as a defense attorney, to come to me, the prosecutor, and say, hey, I know [Tapia] has execution of sentence suspended for three years, but can you agree to two years?"  Counsel responded, "That would have been outside . . . what we could possibly do.  The judge already sentenced her to the execution of sentence suspended [¶] . . . [¶] for three years.  That was already done.  That's not what I was negotiating."

When it denied Tapia's motion to vacate the plea in Case B, the trial court addressed Tapia's testimony, stating, "[W]hether it was the aggravated term or not, it's three years.  That part is clear.  It's three years. [¶] To say, well, yeah, but I didn't want to agree to the aggravated term.  Well, it's three years, regardless of what you call it.  And it was execution suspended on the previous case. [¶] And so the plea on the new case to the same time as was ordered on the previous case, I would call it a sweetheart deal.  You're going to plea[d], but you're not going to get any more punishment is, basically, what she's told."

The trial court asked Tapia's new counsel whether he needed more time to prepare for sentencing, and he responded, "[G]iven in the one case [Tapia is] already sentenced to three years in prison and this is not going to add any time, . . . there's no reason not to go ahead with sentencing."  The court then executed "the previous sentence [that] included a three-year [term]" for ammunition possession and a concurrent term of 120 days for child endangerment in Case A.  It also imposed a concurrent term of two years, the midterm, for methamphetamine possession in Case B.  In directing these

8

terms, the court did not discuss any aggravating or mitigating circumstances. This appeal followed.[9]

## II.
### DISCUSSION

Tapia claims the matter should be remanded for resentencing because the trial court failed to exercise its new discretion under Senate Bill No. 567 when imposing (1) the upper term for ammunition possession and (2) the midterm for methamphetamine possession. We agree that remand is warranted for Tapia to seek a shorter term for the first offense, at which point she may also seek the lower term for the second offense. Thus, we need not address whether remand is independently warranted for her to seek resentencing on the second offense.

Effective January 1, 2022, Senate Bill No. 567 amended section 1170 to provide that a trial court "shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." (§ 1170, subd. (b)(1); Stats. 2021, ch. 731, § 1.3.) In turn, subdivision (b)(2) of the statute provides that "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial."[10] (§ 1170, subd. (b)(2).) Thus,

---

[9] Tapia filed a notice of appeal in Case B and obtained a certificate of probable cause. We subsequently granted her unopposed motion to construe the notice to include Case A.

[10] Likewise, rule 4.420(b) was amended to provide that the trial court "may only choose an upper term when (1) there are circumstances in aggravation of the crime that justify the imposition of an upper term, and (2) the facts underlying those circumstances have been (i) stipulated to by the

9

Senate Bill No. 567 "make[s] the middle term the presumptive sentence" unless aggravating factors admitted or proved beyond a reasonable doubt justify the upper term. (*People v. Lopez* (2022) 78 Cal.App.5th 459, 464 (*Lopez*).)

Senate Bill No. 567 also amended section 1170 to provide that "unless the [trial] court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term" if any one of a list of factors "was a contributing factor in the commission of the offense." (§ 1170, subd. (b)(6); Stats. 2021, ch. 731, § 1.3.) These factors include that the defendant "experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." (§ 1170, subd. (b)(6)(A).)

Senate Bill No. 567 is ameliorative legislation that applies retroactively to judgments that were not final at the time it took effect. (*In re Estrada* (1965) 63 Cal.2d 740, 745; *People v. Jones* (2022) 79 Cal.App.5th 37, 44; *Lopez, supra*, 78 Cal.App.5th at p. 465.) As the parties agree, a judgment is not yet final under *Estrada* when a defendant is placed on probation with execution of sentence suspended, as Tapia was. (*Esquivel, supra*, 11 Cal.5th at p. 673; see *People v. Achane* (2023) 92 Cal.App.5th 1037, 1045–1046.)

The Attorney General argues that Tapia forfeited her claim because she did not raise any issues related to Senate Bill No. 567 below, even though the legislation had already taken effect when she was sentenced. Because Tapia alternatively contends that her trial counsel rendered ineffective assistance by failing to raise the issue, we exercise our discretion to reach the

---

defendant, (ii) found true beyond a reasonable doubt at trial by a jury, or (iii) found true beyond a reasonable doubt by the judge in a court trial."

merits.  (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6; *People v. Crittenden* (1994) 9 Cal.4th 83, 146; but see *People v. Achane*, *supra*, 92 Cal.App.5th at pp. 1042–1043 [concluding defendant forfeited Senate Bill No. 567 issue where legislation took effect before previously imposed term was executed].)

The Attorney General claims that Tapia "has not proved that the [trial] court erred" because she has not shown that the court misunderstood its sentencing discretion.  But it is clear that the court, like the parties, believed that it had no choice but to execute the previously imposed upper term for ammunition possession.  This was incorrect under *Esquivel*, *supra*, 11 Cal.5th at p. 673, and the misapprehension establishes that the court did not exercise its new discretion under Senate Bill No. 567.

Finally, the Attorney General argues that "any error was harmless" because it is not reasonably probable that the trial court would have imposed a lesser term, but in doing so he misconstrues the standard by which we assess whether remand is required.  Where, as here, "a sentencing court was not fully aware of the scope of its discretionary powers, 'the appropriate remedy is to remand for resentencing unless the record "clearly indicate[s]" that the . . . court would have reached the same conclusion "even if it had been aware that it had such discretion." ' "  (*People v. Salazar* (2023) 15 Cal.5th 416, 425.)

The record contains no such clear indication, and a remand is therefore appropriate for the trial court to consider whether to impose any lesser terms under amended section 1170.  The court did not say anything establishing it would impose the upper term for ammunition possession even if it knew it had the option to choose the midterm—the normal presumptive term—or the

11

lower term—the presumptive term if trauma contributed to the offense, which Tapia might be able to demonstrate on remand.[11]

## III.
### DISPOSITION

The sentence is vacated, and the matter is remanded for further proceedings consistent with this opinion.  The judgment is otherwise affirmed.

---

[11] Neither party has addressed what the consequences will be for the plea agreements in both cases should the trial court be inclined to exercise its discretion to impose lesser terms.  We therefore do not resolve that issue, although we note that Tapia may risk having the plea agreements vacated if she successfully challenges the current terms.  (See, e.g., *People v. De La Rosa Burgara* (2023) 97 Cal.App.5th 1054, 1065–1066; *People v. Fox* (2023) 90 Cal.App.5th 826, 834–835.)

_____
Humes, P. J.

WE CONCUR:


_____
Banke, J.



_____
Castro, J.*



*Judge of the Superior Court of the County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*People v. Tiapa*  A166453

13