Filed 9/21/23  P. v. Roser CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROBERT ANTHONY ROSER,<br><br>Defendant and Appellant. | C097800<br><br>(Super. Ct. No. P14CRF0393) |

In 2016, the trial court sentenced defendant Robert Anthony Roser to seven years six months in state prison, suspended the execution of the sentence, and placed defendant on five years' formal probation.  In November 2022, defendant admitted violating probation, and, in January 2023, the court imposed the previously suspended sentence.

Defendant contends that the trial court erred in sentencing defendant without considering the amendments to Penal Code section 1170, subdivision (b) (statutory section citations that follow are found in the Penal Code unless otherwise stated) made by

1

Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567) (Stats. 2021, ch. 731, § 1.3)[1] and to section 1385, subdivision (c) made by Senate Bill No. 81 (2021-2022 Reg. Sess.) (Senate Bill 81) (Stats. 2021, ch. 721, § 1). In both instances, the amendments became effective on January 1, 2022. Defendant was sentenced more than a year later. While defense counsel argued at length for leniency at the sentencing hearing, he made no mention of these amendments or the factual basis for their application in this case. Accordingly, defendant forfeited these claims on appeal. The judgment is affirmed.

## FACTS AND HISTORY OF THE PROCEEDINGS

The factual details of defendant's crimes are not relevant to this appeal. In sum, defendant was driving a pickup truck in June 2014 with a 12-year-old boy in the bed of the truck. Defendant had the boy sit in the truck bed because defendant could not find anything to tie down the contents. The truck sped up around a bend and the boy was thrown from the truck into a tree, sustaining very serious injuries including a fractured skull and brain injury.

In September 2016, a jury found defendant guilty of child abuse and endangerment (§ 273a, subd. (a)) and found true the enhancement that in committing the offense defendant personally inflicted great bodily injury (§ 12022.7, subd. (a)). Defendant entered a no contest plea to the charge of driving with a suspended or revoked license (Veh. Code, § 14601.1, subd. (a)).

---

[1] Defendant erroneously refers to the amendments to section 1170 as enacted by Assembly Bill No. 124 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 695, § 5). Section 1170, subdivision (b)(6), on which defendant relies, was added by Senate Bill 567, not Assembly Bill No. 124. Three bills amending section 1170 were enacted and signed by the Governor on the same day: Senate Bill 567, Assembly Bill No. 124, and Assembly Bill No. 1540 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 719, § 2). Because Senate Bill 567 bears the highest chapter number, it prevails over Assembly No. 124. (Gov. Code, § 9605, subd. (b); *People v. Kelly* (2022) 87 Cal.App.5th 1, 6, fn. 3, review granted Mar. 22, 2023, S278503.)

On November 4, 2016, the trial court imposed the middle term of four years for the child abuse and endangerment offense, plus three years consecutive for the great bodily injury enhancement. The court added the upper term of six months consecutive for driving with a suspended or revoked license, for a total aggregate term of seven years six months in state prison. The court suspended execution of the sentence and placed defendant on five years' formal probation. The trial court advised defendant: "You have an opportunity here to get with the program and do well on probation. But if you choose not to, your next stop will be [the Department of Corrections and Rehabilitation]."

On February 15, 2019, the probation department filed a petition for revocation of defendant's probation, alleging that he violated probation by leaving the state without written consent from his probation officer. On November 9, 2022, defendant admitted violating probation.

On January 9, 2023, the trial court conducted a sentencing hearing. Defense counsel argued that defendant should be given a second chance because he had not committed any additional crimes since being granted probation and had left the state to care for his ill and disabled father. Counsel pointed out that defendant also had stable employment and had voluntarily returned to California to admit his probation violation.

The prosecutor argued that defendant was given a chance to prove himself, but he proved unwilling to work with the probation department. The prosecutor further asserted that defendant was willing to start over only because he was facing a prison sentence of seven years six months.

When defense counsel disputed the prosecutor's suggestion that defendant had already received leniency, the trial court observed that, "at the time the court could have imposed an upper term." The trial court also asked, "wasn't [the prior judge's] forbearance in not having that an executed 7-years 6-months [sentence], wasn't that a grant of leniency?" Defense counsel agreed that the court had shown leniency.

3

The trial court summarized its view of the circumstances: "When [the previous judge] gave [defendant] a 7-year 6-month execution suspended sentence, [the trial court] sent a message: 'You're going . . . away for a long time unless you play this game the way it's supposed to be played. Unless you do everything you're supposed to do, . . . you're going away for 7 years 6 months.' And that's a pretty strong message.

"Now, if I do what you're asking me to do, what's the message I'm sending to everybody? I'm sending the message that, 'Okay. You get an execution suspended sentence. The judge gives you a break. And if you screw up and you don't – you unilaterally decide to ignore the court's orders and do what you want to do, as long as before you come back to court you kind of straighten your life around, you can get your sentence reduced. You get a break.' "

The trial court imposed the previously suspended sentence of seven years and six months.

Defendant filed a timely appeal.

## DISCUSSION

Preliminarily, we agree with defendant—and the People do not dispute—that the ameliorative amendments made by Senate Bill 567 and Senate Bill 81 to California's sentencing law, which were enacted after the trial court suspended execution of defendant's sentence and granted probation, are retroactive for purposes of *In re Estrada* (1966) 63 Cal.2d 740, 745, and apply to this case. (See *People v. Esquivel* (2021) 11 Cal.5th 671, 680 [new legislation that reduces punishment for an offense applies retroactively to all cases not yet final, including a case where defendant was originally placed on probation with execution of a state prison sentence suspended]; see also *People v. McKenzie* (2020) 9 Cal.5th 40, 43; *People v. Clark* (2021) 67 Cal.App.5th 248, 257-259.)

4

Defendant contends that, in imposing sentence, the trial court erred in not taking into consideration section 1170, subdivision (b)(6)(A), added by Senate Bill 567, which may entitle a defendant to a lower term where "psychological, physical, or childhood trauma" is a contributing factor in the commission of a crime. Defendant further claims the trial court erroneously failed to consider section 1385, subdivision (c)(2)(D), added by Senate Bill 81, which may entitle a defendant to dismissal of an enhancement where the current offense is connected to "mental illness."

Defendant asserts that the trial court had before it at sentencing information indicating defendant experienced childhood trauma and suffered from mental illness. After defendant admitted violating probation, the probation department prepared a supplemental report. In response to an inquiry whether defendant had ever been examined or treated for mental or emotional problems, the report stated: "The defendant reports he was held a[t] gunpoint when out in the community with his friends at age 14. The suspect was arrested, and the children had to testify at the trial. The suspect was ultimately acquitted. The defendant never received professional help to process this experience." (Bold and underline omitted.) In the section of the report describing defendant's education, the report stated: "The defendant reports that a grade school he attended told his parents that he had Attention Deficit Disorder (ADHD). However, his parents never obtained treatment for him." (Bold and underline omitted.) Section 1385, subdivision (c)(5) identifies "mental illness" as a "mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders." Defendant argues that ADHD is so identified. However, there is nothing in the record to support this assertion, nor does defendant request judicial notice of the manual.

Defendant also argues that the grounds for dismissal of an enhancement set forth in section 1385, subdivision (c)(2)(F) apply, i.e., "[t]he current offense is not a violent felony as defined in subdivision (c) of Section 667.5" However, the People are correct that section 667.5, subdivision (c)(8) states that violent felonies include "[a]ny felony in

5

which the defendant inflicts great bodily injury on a person other than an accomplice, which has been charged and proved as provided for in Section 12022.7 . . . ." (See also *People v. Gonzalez* (2009) 178 Cal.App.4th 1325, 1330 [defendant's infliction of great bodily qualified him for an enhancement under section 12022.7, subd. (a) and turned the underlying assault into a "violent felony" as defined by section 667.5, subd. (c)].) His argument fails.

Defendant contends that the record does not show that the trial court considered childhood trauma or mental health as factors in imposing sentence. But this omission occurred only because defense counsel never mentioned the amendments to sections 1170 or 1385 — or even defendant's statements quoted above in the supplemental probation report — at the sentencing hearing, notwithstanding the fact that the trial court imposed the previously suspended sentence over a year after the amendments became effective.

A "defendant cannot challenge [the] trial court's sentencing choice for the first time on appeal because 'defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention' at the time of sentencing." (*People v. Flowers* (2022) 81 Cal.App.5th 680, 683-684, review granted Oct. 12, 2022, S276237, fn. omitted, quoting *People v. Scott* (1994) 9 Cal.4th 331, 353; see also *People v. Carmony* (2004) 33 Cal.4th 367, 375-376; *People v. Tilley* (2023) 92 Cal.App.5th 772, 778; *People v. Anderson* (2023) 88 Cal.App.5th 233, 241-242, review granted Apr. 19, 2023, S278786.)

When the trial court imposed the middle term for child endangerment and abuse, defendant was obligated to object or otherwise inform the court that he may be entitled to the lower term under section 1170, subdivision (b)(6)(A). By the same token, when the court added three years to defendant's sentence under section 12022.7, it was incumbent on defendant to notify the court that this enhancement was subject to dismissal under

6

section 1385, subdivision (c)(2)(A). In both cases, defendant did not so inform the court and he thereby forfeited these issues on appeal.

On reply, defendant argues the trial court's statements at the sentencing hearing forecasted that the court would not apply the sentencing laws currently in effect and simply impose the suspended sentence; therefore, any objection was futile. Failure to object may be excusable if an objection would be futile. (See *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1073.) As we read the trial court's comments at sentencing, however, they show that the court expressed no opinion regarding whether recent enactments could change the sentencing calculus because defendant did not raise the issue. Moreover, the trial court permitted the parties to argue freely and at length at the sentencing hearing, further indicating that an objection would not have been futile.

Next, defendant argues that an appellate court has discretion to consider an issue not raised in the trial court if it presents a purely legal question or involves undisputed facts. (See *People v. Jiminez* (2021) 73 Cal.App.5th 862, 874.) Defendant does not claim the issue presents a pure question of law, but rather argues that it is undisputed that the supplemental probation report included references to his childhood trauma and mental illness. We disagree that the relevant facts are undisputed. Nothing in the report indicates that the incident defendant experienced at age 14 was "a contributing factor in the commission of offense," as required for the court to apply section 1170, subdivision (b)(6). (See *People v. Fredrickson* (2023) 90 Cal.App.5th 984, 993.) Equally, the report does not contain any suggestion that "the current offense is connected to" defendant's ADHD reported in grade school, as required for application of section 1385, subdivision (c)(2)(D). (See *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1094, review granted Apr. 12, 2023, S278894.) These are factual issues that require resolution to determine if section 1170, subdivision (b)(6) or section 1385, subdivision (c), would apply.

We conclude defendant forfeited claims that the trial court erred in not considering the amendments to sentencing law made by Senate Bill 567 and Senate Bill 81.

7

DISPOSITION

The judgment is affirmed.

                                                   _____

                                                   HULL, J.

We concur:

_____

EARL, P. J.

_____

RENNER, J.