Filed 7/12/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re J.M., a Person Coming Under the Juvenile Court Law. | C099085 |
| THE PEOPLE, Plaintiff and Respondent, v. J.M., Defendant and Appellant. | (Super. Ct. Nos. JV137240 & 22HC00217) |

APPEAL from a judgment of the Superior Court of Sacramento County, Dena M. Coggins, Judge. Reversed with directions.

William Safford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Ivan P. Marrs and Edrina Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

J.M. appeals from an order transferring his case from juvenile court to adult criminal court pursuant to Welfare and Institutions Code section 707.[1] He contends that we should conditionally reverse the order and remand the matter to juvenile court for a new transfer/amenability hearing in light of recent amendments to section 707 enacted by Assembly Bill No. 2361 (2021-2022 Reg. Sess.) (Assembly Bill No. 2361) (Stats. 2022, ch. 330, § 1) and Senate Bill No. 545 (2023-2024 Reg. Sess.) (Senate Bill No. 545) (Stats. 2023, ch. 716, § 1). He further contends that if he is again transferred to adult criminal court, the court should be required to conduct a new sentencing hearing to consider certain ameliorative changes in the sentencing laws that took effect after his sentence was imposed.

The People concede that recent amendments to section 707 apply retroactively to J.M.'s case and that we should remand this matter for a new transfer/amenability hearing. But the People oppose J.M.'s request for resentencing should his case ultimately be transferred to adult criminal court, contending that the original judgment and sentence are now final.

We conclude that because J.M.'s case is on direct appeal and not final, J.M. is entitled to the retroactive benefit of *all* the ameliorative changes made to the state's criminal laws. Accordingly, we shall conditionally reverse the transfer order and remand with directions to refer the case to the juvenile court for a transfer/amenability hearing consistent with current law. If, after conducting the hearing, the juvenile court determines that J.M.'s case should be transferred to a court of criminal jurisdiction, then the criminal court is directed to conduct a new sentencing hearing to consider the potentially ameliorative changes in the sentencing laws effected by Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill No. 567) and Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Assembly Bill No. 518).

---

[1]     Undesignated section references are to the Welfare and Institutions Code.

FACTUAL AND PROCEDURAL BACKGROUND

In 2015, when J.M. was 17 years old, he broke into the home of a 72-year-old woman, assaulted her with the intent to commit rape, and stole about $900 in cash.[2] Although J.M. was a minor at the time of his crimes, the People elected to file charges against J.M. directly in adult criminal court, as permitted under former section 707.

After a jury trial, J.M. was found guilty of assault with the intent to commit rape during the commission of a burglary (Pen. Code, § 220, subd. (b)), attempted rape (Pen. Code, §§ 664/261, subd. (a)(2)), and first degree robbery (Pen. Code, § 211). The jury also found true an elder abuse enhancement allegation under Penal Code section 667.9, subdivision (a). The trial court sentenced defendant to an aggregate term of 14 years to life, consisting of an indeterminate term of seven years to life for the assault with intent to commit rape, plus a consecutive term of seven years for the robbery (upper term of six years) and elderly victim enhancement (one year). The court imposed, but stayed, an upper term of four years for the attempted rape offense.

In November 2016, shortly after J.M.'s conviction, the electorate passed the Public Safety and Rehabilitation Act of 2016 (Proposition 57), which eliminated direct charging of juveniles in adult criminal court. (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 304-305 (*Lara*).) Under Proposition 57, minors still could be tried in criminal court, but only after a juvenile court judge conducts a "transfer hearing" to consider various factors such as the minor's degree of criminal sophistication and previous delinquent history. (*Lara, supra*, 4 Cal.5th at p. 305; former § 707, subd. (a)(2), as amended by Prop. 57, Gen. Elec. (Nov. 8, 2016) § 4.2, eff. Nov. 9, 2016.)

On appeal from his conviction, J.M. argued that the provisions of Proposition 57 applied retroactively to his case under *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).

---

[2]    This court granted appellant's motion to incorporate the record from his previous appeal. (*People v. McKeever* (Mar. 21, 2018, C083997) [nonpub. opn.] (*McKeever*).)

(*McKeever, supra*, C083997.)  He argued that we should conditionally reverse the judgment and remand the matter to the criminal court for a transfer hearing.  (*Ibid*.)

While J.M.'s appeal was pending, our Supreme Court held that Proposition 57 is an ameliorative change in the law that applies retroactively to all defendants whose judgments are not yet final.  (*Lara, supra*, 4 Cal.5th at pp. 303-304.)  The court reasoned that while new legislation is generally presumed to apply prospectively, there is an established exception under *Estrada*, *supra*, 63 Cal.2d 740, when the Legislature amends a statute to lessen the punishment for a criminal offense.  (*Lara, supra*, at p. 307.)  The court noted that " '[t]he *Estrada* rule rests on an inference that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.'  [Citations.]"  (*Id*. at p. 308, fn. omitted.)

Although Proposition 57 did not reduce the punishment for a crime, the court held that *Estrada*'s inference of retroactivity still applied because it ameliorated the *possible* punishment for a class of persons, namely juveniles, by providing an opportunity for them to remain in the juvenile system.  (*Lara, supra*, 4 Cal.5th at pp. 303, 308.)  And since nothing in Proposition 57's text or ballot materials rebutted this inference, the court concluded that the law applies retroactively to all nonfinal cases.  (*Lara, supra*, at pp. 303-304.)  The court further held that the appropriate remedy for juveniles entitled to a transfer hearing whose cases are already pending in adult court is a conditional reversal and remand for a juvenile transfer hearing.  (*Id*. at pp. 309-310, 313.)

Pursuant to *Lara, supra*, 4 Cal.5th 299, we conditionally reversed J.M.'s judgment and remanded the case to the juvenile court with directions to conduct a transfer hearing consistent with our opinion.  (*McKeever, supra*, C083997.)  Our opinion directed:  "When conducting the transfer hearing, the juvenile court shall, to the extent possible, treat the matter as though the prosecutor had originally filed a juvenile petition in juvenile court and had then moved to transfer defendant's case to a court of criminal jurisdiction.

4

[Citations.] If, after conducting the juvenile transfer hearing, the court determines that it would have transferred defendant to a court of criminal jurisdiction . . . then defendant's convictions and sentence are to be reinstated. [Citation.] On the other hand, if the juvenile court finds that it would *not* have transferred defendant to a court of criminal jurisdiction, then it shall treat defendant's convictions as juvenile adjudications and impose an appropriate disposition within its discretion." (*Ibid*.)

On remand, the superior court (sitting as the juvenile court) held a transfer hearing that spanned multiple days, commencing on September 24, 2020. In December 2020, at the conclusion of the hearing, the court ordered the case transferred to criminal court and reinstated the prior criminal judgment.

At the time the transfer order was entered, there was no statutory right to appeal the order; appellate review was limited to a petition for extraordinary writ. (*People v. Superior Court (S.L.)* (2019) 40 Cal.App.5th 114, 120.) Although J.M. was advised of this fact, J.M.'s counsel nevertheless filed a notice of appeal instead of a writ petition. On December 8, 2021, this court dismissed the appeal as taken from an unappealable order.

After the appeal was dismissed, J.M. filed a petition for writ of habeas corpus with the superior court (Super. Ct. Sacramento County, 2023, No. 22HC00217), contending that his attorney provided ineffective assistance of counsel by filing a notice of appeal instead of a writ petition to contest the transfer order. In June 2023, the superior court granted the habeas petition. In considering an appropriate remedy, the court noted that due to changes in the law (Stats. 2021, ch. 195, § 1 [Assembly Bill No. 624 (2021-2022 Reg. Sess.)]) transfer orders entered after January 1, 2022, are appealable. (§ 801, subd. (a).) Thus, the court ordered the juvenile court to "vacate and reenter the order previously issued on December 2, 2020" to allow J.M. the opportunity to file a direct appeal.

5

The trial court subsequently vacated the transfer order and reentered it, effective July 12, 2023.  Shortly thereafter, on July 18, 2023, J.M. filed this appeal of the reentered order.

DISCUSSION

I

*Amendments to Section 707*

Section 707 governs the procedure for transferring a minor from juvenile court to adult criminal court.  At the time of J.M.'s transfer hearing, section 707 required the prosecution to prove by a preponderance of the evidence that the minor should be transferred to adult criminal court.  (Former § 707, subd. (a)(3); *In re S.S.* (2023) 89 Cal.App.5th 1277, 1284.)  In making that decision, the juvenile court was required to consider five criteria:  (1) the degree of criminal sophistication exhibited by the minor; (2) whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction; (3) the minor's previous delinquent history; (4) the success of previous attempts to rehabilitate the minor; and (5) the circumstances and gravity of the offense committed by the minor.  (Former § 707, subd. (a)(3)(A)–(E); *In re E.P.* (2023) 89 Cal.App.5th 409, 415.)

Here, the adult criminal court considered each of the criteria specified in former section 707, subdivision (a), and found that the criteria relating to criminal sophistication, rehabilitation, and circumstances/gravity weighed in favor of granting the motion, while the criteria relating to previous delinquent history and prior rehabilitative efforts weighed in favor of denying the motion.  Considering all five criteria together, the court concluded that the prosecution met its burden of proof and granted the transfer motion.

Effective January 1, 2023, Assembly Bill No. 2361 amended section 707, subdivision (a)(3), to include the following language:  "In order to find that the minor should be transferred to a court of criminal jurisdiction, the court shall find by clear and convincing evidence that the minor is not amenable to rehabilitation while under the

6

jurisdiction of the juvenile court.  In making its decision, the court shall consider the criteria specified in [section 707, subdivision (a)(3),] subparagraphs (A) to (E), inclusive. If the court orders a transfer of jurisdiction, the court shall recite the basis for its decision in an order entered upon the minutes, which shall include the reasons supporting the court's finding that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court. . . ."  (§ 707, subd. (a)(3); Stats. 2022, ch. 330, § 1.) This amendment changed the procedure for ordering a juvenile transfer in three material ways, by (1) raising the prosecution's burden of proof, (2) requiring a new specific finding regarding amenability to rehabilitation, and (3) requiring the court to state the reasons supporting a finding that the minor is not amenable to rehabilitation.  (*In re E.P., supra*, 89 Cal.App.5th at p. 416; *In re S.S., supra*, 89 Cal.App.5th at p. 1284.)

Effective January 1, 2024, Senate Bill No. 545 further amended section 707, subdivision (a)(3)(A) through (E) to require the court to give weight to factors that previously were discretionary and to specify additional factors that must be considered in determining whether the prosecution has carried its burden of proof to transfer a juvenile to criminal court.  (Stats. 2023, ch. 716 § 1.)  Specifically, Senate Bill No. 545 amended the factors the court must weigh in evaluating a minor's criminal sophistication to include "the existence of childhood trauma; the minor's involvement in the child welfare or foster care system; and the status of the minor as a victim of human trafficking, sexual abuse, or sexual battery."  (§ 707, subd. (a)(3)(A)(ii).)  It also amended the factors the court must weigh in evaluating the circumstances and gravity of the offense to include "evidence offered that indicates that the person against whom the minor is accused of committing an offense trafficked, sexually abused, or sexually battered the minor."  (§ 707, subd. (a)(3)(E)(iii).)

J.M. argues these recent amendments to section 707, subdivision (a)(3) are ameliorative changes that apply retroactively to him under *Estrada, supra*, 63 Cal.2d 740,

requiring a remand for a new transfer/amenability hearing. The People concede the point and we agree.

Estrada "stand[s] for the proposition that (i) in the absence of a contrary indication of legislative intent, (ii) legislation that ameliorates punishment (iii) applies to all cases that are not yet final as of the legislation's effective date." (*People v. Esquivel* (2021) 11 Cal.5th 671, 675 (*Esquivel*).) As the parties' note, the recent amendments to section 707 have similar ameliorative effects to the amendments made by Proposition 57 in that they "make it more difficult to transfer [minors] from juvenile court," which can result in more lenient treatment. (*In re S.S., supra*, 89 Cal.App.5th at pp. 1288-1289; *In re E.P., supra*, 89 Cal.App.5th at p. 416; *In re Miguel R.* (2024) 100 Cal.App.5th 152, 169-170.) Since there is nothing to indicate the Legislature intended the amendments to apply only prospectively, we presume under *Estrada* that they apply retroactively to all cases not yet final. (*In re S.S., supra*, at p. 1288; *In re E.P., supra*, at p. 416.)

This matter is not "final" because it is pending on direct appeal from the reentered transfer order. (§ 801, subd. (a); *People v. Vieira* (2005) 35 Cal.4th 264, 305 [a judgment generally becomes final when all direct appeals have been exhausted and the time for filing a petition for certiorari has expired]; *People v. Padilla* (2022) 13 Cal.5th 152, 161-162 (*Padilla*) [a successful collateral attack may reopen finality for purposes of *Estrada*].) As such, J.M. is entitled to retroactive application of the ameliorative changes in the law. Because the record does not clearly indicate that the trial court would have reached the same conclusion even if it had been aware of the full scope of its powers, we conditionally reverse the transfer order and remand with directions to conduct a new transfer/amenability hearing under the amended version of section 707. (*People v. Salazar* (2023) 15 Cal.5th 416, 419, 425; *In re F.M.* (2023) 14 Cal.5th 701, 714-716.) We express no opinion on how the juvenile court should rule on the merits.

## II

### *Senate Bill No. 567 and Assembly Bill No. 518*

We next consider whether, if defendant is again transferred to adult criminal court, the trial court must conduct a new sentencing hearing applying ameliorative changes in the law, or whether the sentence that defendant is attempting to appeal became final.

When J.M. was sentenced in 2016, former Penal Code section 1170, subdivision (b) provided that "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court." In addition, former Penal Code section 654 provided that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment . . . ."

Effective January 1, 2022, Senate Bill No. 567 amended Penal Code section 1170 to make the middle term the presumptive maximum unless "there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (Pen. Code, § 1170, subd. (b)(1)-(2); Stats. 2021, ch. 731, § 1.3.) The bill also created a presumption in favor of the low term when a defendant's youth or "psychological, physical, or childhood trauma" was a contributing factor in the commission of the offense. (Pen. Code, § 1170, subd. (b)(6)(A); Stats. 2021, ch. 731, § 1.3.)

Effective January 1, 2022, Assembly Bill No. 518 amended Penal Code section 654, subdivision (a), to permit an act or omission punishable under two or more provisions of law to "be punished under either of such provisions." (§ 654, subd. (a); Stats. 2021, ch. 441, § 1.) As a result, "a trial court is no longer required to punish under

the longest possible term of imprisonment when multiple offenses are based on the same act or omission." (*People v. White* (2022) 86 Cal.App.5th 1229, 1236.)

J.M. argues that because his case remains on direct appeal and not yet final, he is entitled to the benefit of the ameliorative changes in the law effected by Senate Bill No. 567 and Assembly Bill No. 518. Thus, if the current transfer order is affirmed or he is again transferred to adult criminal court on remand, J.M. contends he must receive a new sentencing hearing at which the court may exercise its discretion under the current sentencing scheme.[3]

The People do not dispute that Senate Bill No. 567 and Assembly Bill No. 518 are ameliorative changes in the law that apply retroactively to nonfinal cases under *Estrada*. (*People v. White, supra*, 86 Cal.App.5th at p. 1236; *People v. Jones* (2022) 79 Cal.App.5th 37, 45.) They instead contend that these ameliorative changes do not apply to J.M. because his sentence, having been conditionally reversed and subsequently reinstated, is now "affirmed and final."

The People's argument has surface appeal. In general, when a judgment is reversed and remanded with directions, " 'those directions are binding on the trial court and *must* be followed.' " (*Ayyad v. Sprint Spectrum, L.P.* (2012) 210 Cal.App.4th 851, 860 (*Ayyad*); accord, *Butler v. Superior Court of Los Angeles County* (2002) 104 Cal.App.4th 979, 982.) The order of the appellate court, as stated in the remittitur, defines the scope of the trial court's jurisdiction to act, and action which does not conform to the reviewing court's directions is unauthorized and void. (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 701; *Ayyad, supra*, at p. 860.)

---

[3]    Although the scope of our review is limited to the notice of appeal and order appealed from (*Faunce v. Cate* (2013) 222 Cal.App.4th 166, 170), we find jurisdiction to consider these challenges to J.M.'s sentence because the transfer order reinstated J.M.'s convictions and sentence.

Here, J.M.'s judgment was conditionally reversed and remanded with directions to conduct a transfer hearing consistent with our opinion. (*McKeever, supra,* C083997.) Our opinion directed that "[i]f, after conducting the juvenile transfer hearing, the court determines that it would have transferred defendant to a court of criminal jurisdiction . . . then defendant's convictions and sentence are to be reinstated." (*Ibid*.) Consistent with our directions, the court conducted a juvenile transfer hearing and determined that it would have transferred J.M. to adult criminal court. Thus, the court arguably did not have jurisdiction to do anything other than reinstate the prior sentence. (See *People v. Lopez* (2023) 93 Cal.App.5th 1110, 1119-1120, review granted, Nov. 15, 2023, S281488, fully briefed.)

However, even if there were constraints on the trial court's jurisdiction, the California Supreme Court's decisions in *Esquivel, supra*, 11 Cal.5th 671, and *Padilla, supra*, 13 Cal.5th 152, make clear that the guiding principle of *Estrada* is that a law lessening punishment for a crime is presumed to apply to every case to which it *constitutionally* could apply—distinguishing only between cases that are final and those that are not. (*Esquivel, supra*, at pp. 674, 677-679; *Padilla*, *supra,* at pp. 160-162; see *Lara, supra*, 4 Cal.5th at p. 308.) Further, the cutoff point for "finality" is the date when the criminal prosecution or proceeding as a whole is complete. (*Esquivel*, *supra*, at p. 679; *Padilla*, *supra*, at p. 161; accord, *People v. Mitchell* (2023) 97 Cal.App.5th 1127, 1139, review granted, Feb. 21, 2024, S283474, briefing deferred.)

In *Esquivel*, the defendant appealed from an order revoking probation and causing a previously imposed but suspended sentence to take effect. (*Esquivel, supra*, 11 Cal.5th at p. 673.) During the pendency of his appeal, the Legislature amended the law under which the trial court had imposed two enhancements. (*Ibid*.) The parties agreed that the amendment applied to all nonfinal cases, but disagreed whether defendant's case was final when the legislation took effect. (*Ibid*.) The People argued that because the court previously had imposed a suspended execution sentence, and the defendant did not

appeal that order, the defendant's underlying conviction became final before the ameliorative legislation took effect. (*Id*. at p. 678; see also *People v. Howard* (1997) 16 Cal.4th 1081, 1087-1088 [where a defendant is placed on probation with a suspended-execution sentence, revocation brings the former judgment into full force and effect].) The court disagreed, noting "the mere fact that a court has already addressed an issue in a case poses no insuperable constitutional bar to legislative activity affecting resolution of that issue." (*Esquivel*, *supra*, at pp. 678-679.) Thus, even though there were "constraints" on the trial court's discretion to modify the previously imposed sentence, the case was not final for purposes of *Estrada* because the defendant still could obtain direct review of the order revoking probation and causing that sentence to take effect. (*Id*. at pp. 673, 678-680.)

In *Padilla*, our Supreme Court held that even after a judgment has become final, its finality may be "reopened" as the result of a successful collateral attack. (*Padilla, supra*, 13 Cal.5th at pp. 158, 161-162.) The defendant in *Padilla* was a juvenile who stabbed his mother to death and conspired with a cousin to kill his stepfather. (*Id*. at p. 159.) Following a transfer hearing at which he was determined not fit to be dealt with under juvenile court law, the defendant was convicted in adult criminal court and sentenced to life without the possibility of parole. (*Ibid*.) After his judgment was final, the defendant successfully obtained resentencing on a petition for habeas corpus related to changes in the law affecting juvenile sentencing. (*Ibid*.) While awaiting resentencing, California voters approved Proposition 57, providing that a juvenile could be tried in adult court only after a transfer hearing. (*Ibid*.) The trial court did not hold a transfer hearing and again imposed life imprisonment without the possibility of parole. (*Ibid*.)

The question on appeal was whether the defendant was entitled to a transfer hearing under Proposition 57 because his case became nonfinal once his sentence was vacated in the habeas corpus proceeding. (*Padilla, supra*, 13 Cal.5th at pp. 158-159.) Finding no meaningful distinction between sentences rendered "nonfinal" because the

defendant is undergoing retrial or resentencing and those " 'not yet final on initial review,' " the Supreme Court held that Proposition 57 retroactively applied to the defendant's case. (*Padilla*, *supra*, at p. 158.) The court reasoned that when a new trial or new sentencing hearing is conducted after a collateral attack, the prior judgment is no longer final and an appeal from that new proceeding is part of a direct review of a nonfinal judgment. (*Id*. at pp. 163-164.) Thus, when the defendant's sentence was vacated, the finality of his judgment became nonfinal for purposes of *Estrada*. (*Id*. at pp. 161-162, 170.) And because the judgment was nonfinal, the provisions of Proposition 57 applied to his resentencing. (*Padilla, supra*, at p. 170.) Notably, the court reached this conclusion even though the juvenile fitness question was not an issue raised by the collateral attack and the sentencing court ultimately re-imposed the same sentence. (*Id*. at pp. 184-185 [dis. opn. of Corrigan, J.].)

Like *Esquivel* and *Padilla*, this case is not final because it is an appeal from a juvenile transfer order. Even if that order previously became final, its finality was reopened when the order was vacated and reentered in July 2023, after the effective date of Assembly Bill No. 624. This appeal is part of the direct review of that order, which relates to J.M.'s potential sentence.

We acknowledge that neither *Esquivel* nor *Padilla* is directly on point. *Esquivel* involved an appeal from an order revoking probation and imposing a previously-imposed sentence, rather than an appeal from a juvenile transfer decision. (*Esquivel, supra*, 11 Cal.5th at p. 673.) And in *Padilla*, unlike this case, the defendant's original sentence was vacated and a new sentence was imposed. (*Padilla*, *supra*, 13 Cal.5th at pp. 162-164.) Nevertheless, the cases are instructive because the rule they articulate is that finality for purposes of *Estrada* does not attach until the criminal proceeding as a whole has ended, when courts can no longer provide a remedy on direct review. (*Padilla, supra*, at p. 161; *Esquivel, supra*, at pp. 678-679.)

Because his case is not final, J.M. is entitled to the retroactive application of the ameliorative changes effected by Senate Bill No. 567 and Assembly Bill No. 518. (*In re A.M.* (2024) 102 Cal.App.5th 557, 568-569) [retroactively applying legislation to a case on direct appeal from an order denying a transfer to criminal court following a post-judgment transfer hearing]; *People v. Trent* (2023) 96 Cal.App.5th 33, 41, review granted, Dec. 20, 2023, S282644, briefing deferred [retroactively applying legislation to reverse a gang conviction following a successful petition for resentencing under Penal Code section 1172.6]; see also *People v. Lopez, supra*, 93 Cal.App.5th at pp. 1121-1125, review granted [dis. opn. of Raphael, J.].) Thus, if on remand J.M. is again transferred to adult criminal court, he must be provided a new sentencing hearing at which the court reconsiders his sentence in light of these ameliorative changes in the law.

## DISPOSITION

The transfer order is conditionally reversed, and the matter is remanded to the juvenile court for a new transfer/amenability hearing to be conducted pursuant to section 707, as amended.  If the juvenile court determines it would not have transferred the case to the criminal court applying current law, it shall treat J.M.'s convictions as juvenile adjudications and order an appropriate disposition.  If the juvenile court determines it would have transferred J.M. to adult criminal court, then the case shall be transferred to the criminal court and J.W.'s convictions and sentence shall be automatically reinstated as of that date.  The trial court is then directed to conduct a resentencing hearing consistent with this opinion.  If the criminal court modifies the sentence, the clerk of the criminal court is directed to amend the abstract of judgment reflecting the modification and forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

_____\s\_____,
Krause, J.


We concur:


\_\_\_\_\_\s\_____,
Hull, Acting P. J.


\_\_\_\_\_\s\_____,
Feinberg, J.